UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
MARC PENBERG,

                Plaintiff,

      - against -

HEALTHBRIDGE MANAGEMENT,

                Defendant.
---------------------------------------------------------X

**R E P O R T   A N D**
**RECOMMENDATION**

08 CV 1534 (SJF)

On April 14, 2008, plaintiff Marc Penberg commenced this action against HealthBridge

Management ("HealthBridge"), alleging disability discrimination in violation of the Americans

with Disabilities Act ("ADA"), 42 U.S.C. §§ 1210 et seq., age discrimination in violation of the

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., as well as

violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq., the New York

State Human Rights Law ("NYSHRL") §§ 296 et seq., the New York City Human Rights Law

("NYCHRL") §§ 8-101 et seq., and the Massachusetts Fair Employment Act ("MFEA").

(Compl.[1] ¶ 1).

On April 23, 2009, defendant moved to amend its Answer to include counterclaims

alleging breach of fiduciary duty and spoliation of evidence. Defendant also moved to dismiss

plaintiff's Complaint with prejudice based on plaintiff's alleged spoliation of evidence. In

Orders dated April 28, 2009 and June 3, 2009, the motions were referred to the undersigned to

prepare a Report and Recommendation.

---

[1]Citations to "Compl." refer to plaintiff's Complaint, filed on April 14, 2008.

<u>BACKGROUND</u>

Defendant is a Massachusetts based corporation that manages rehabilitation and skilled nursing facilities in nine states. (Compl. ¶ 5; O'Brien Aff. 4/23[2] ¶ 2). Defendant's sales team seeks patients in New York to be placed in HealthBridge facilities in other states, particularly its neuro-behavioral program in Massachusetts. (Compl. ¶ 5). Plaintiff, a resident of New York, was born in 1954 and is a former employee of defendant. (Id. ¶ 8).

In 1993, plaintiff began his employment with Mediplex, a company that was acquired by Sun Bridge, which was in turn acquired by HealthBridge in 2003. (Id. ¶ 6). At all times relevant to this lawsuit, plaintiff was an employee of defendant HealthBridge or its predecessors. (Id. ¶¶ 3, 6). From 2006, until his termination in August 2007, defendant employed plaintiff as a business development manager responsible for marketing in New York State and supervising a staff of three liaisons. (Id. ¶¶ 3, 8).

As a business development manager, plaintiff's responsibilities included "searching for potential clients with hospitals and social service agencies, working with those entities to refer patients to [defendant's] facilities, and maintaining an ongoing contractual relationship with the State of New York's Medicaid program." (Compl. ¶ 8; see also Def.'s Mem.[3] at 4). Plaintiff did not have an office in his sales territory, so he used his home as his office. (Compl. ¶ 8). In the course of performing his duties, plaintiff would "prepare certain documents on [his] computer"

---

[2]Citations to "O'Brien Aff. 4/23" refer to the Affidavit of Jennifer M. O'Brien, Esq. in Support of Defendant's Motions to Dismiss and Amend, filed on April 23, 2009.

[3]Citations to "Def.'s Mem." refers to Defendant's Memorandum of Law in Support of its Motions to Amend and Dismiss, filed on April 23, 2009.

and then fax them to his supervisors at HealthBridge. (Penberg Decl.[4] ¶ 6). These documents would include patient assessments, personnel evaluation of his subordinates, and sales reports, among other things. (Id. ¶ 5). Although plaintiff was issued a company laptop from which to conduct his work for HealthBridge, plaintiff instead chose to use his personal computers in his home office to conduct HealthBridge business because he preferred Apple computers. (Def.'s Mem. at 5; Penberg Decl. ¶¶ 3-4; O'Brien Aff. 4/23 ¶ 5). Defendant claims that it was unaware that plaintiff used his home computers to conduct HealthBridge business. (Def.'s Mem. at 5; O'Brien Aff. 4/23 ¶ 5). Plaintiff concedes that he would "keep sales/marketing materials concerning HealthBridge on [his] computer," and print these documents as needed. (Id. ¶ 7).

In 2006, plaintiff underwent coronary bypass surgery, causing plaintiff to miss his annual review that was scheduled to take place the day before his surgery. (Compl. ¶¶ 9, 10). In total, plaintiff was unable to work for 12 weeks because of the surgery. (Id. ¶ 9). Plaintiff claims that due to his absence, his "review [was] cancelled and [plaintiff] was denied a pay increase [that] all other employees received in 2006." (Id. ¶ 10). At some point, plaintiff also informed defendant that "he had diabetes." (Id. ¶ 12).

Upon his return to work, plaintiff claims to have "resumed providing the outstanding service he has previously provided." (Id.) This included being "responsible for" 15 of defendant's 30 new patient admissions in New York. (Id.)

On or about August 17, 2007, plaintiff was advised that his position was being eliminated because of a "regional reorganization." (Id. ¶ 13). Plaintiff alleges, upon information and belief,

---

[4]Citations to "Penberg Decl." refer to the Declaration of Marc Penberg, filed on June 3, 2009.

3

that his position was the only sales position that defendant eliminated during this reorganization. (Id.) Plaintiff further claims that none of the positions of staff members under plaintiff, all of whom were younger than plaintiff and none of whom were disabled, were eliminated. (Id.)

On April 14, 2008, plaintiff filed the instant Complaint against defendant, alleging that defendant discharged him "because of his disabilities, because of the perception that his disabilities might cause additional absence, because he had exercised his right to a 12-week medical leave, and because of his age." (Id. ¶ 14). In his Complaint, plaintiff requests reinstatement, back-pay, $1 million in damages for emotional distress, $1 million in punitive damages, as well as attorney's fees and costs and "such other and further relief as is just and equitable." (Id. ¶ 5). Defendant filed its Answer on May 13, 2008, denying plaintiff's allegations and asserting twenty-nine affirmative defenses. (Def.'s Ans.[5]).

The controversy that is the subject of the instant motions arose following defendant's receipt of plaintiff's document production. On or about February 20, 2009, defendant claims to have learned that plaintiff "maintained confidential and proprietary data [of defendant's] on his own personal home computer(s) after his separation of employment unbeknownst to [defendant] and against [defendant's] policy." (Def.'s Mem. at 2). This data included information relating to "referral sources, patient admissions . . . , [and] marketing;" "social security numbers, addresses, phone numbers, salary information" of current and former employees; and, "confidential health information of prospective or actual patient/residents of its facilities." (Id.; see also Berdzik

---

[5]Citations to "Def.'s Ans." refer to Defendant's Answer, filed on May 13, 2008.

Decl.[6] ¶ 3). According to defendant, it had a policy that all former employees return Company property to HealthBridge at the time of separation, including all copies of confidential or proprietary information and that HealthBridge proprietary information not be disclosed to the public. (Def.'s Mem. at 5; O'Brien Aff. 4/23 ¶ 6).

Upon learning that plaintiff had maintained this information after his employment with HealthBridge had ceased, defendant promptly requested that plaintiff produce all documents in his possession relating to defendant in both electronic and paper form. (Id. at 7). Defendant also "reminded plaintiff[] of his duty to preserve, maintain and produce the documents requested in discovery and relevant to [HealthBridge] and this action." (Def.'s Mem. at 7). Defendant also advised plaintiff that many of the documents plaintiff produced in discovery contained confidential information that may be subject to the Health Insurance Portability and Accountability Act (HIPAA). (See Berdzik Dec. ¶ 7, Exs. A, D). Defendant demanded that plaintiff return all such confidential documents and that plaintiff maintain his computers in their present state. (Def.'s Mem. at 8).

On February 23, 2009, defendant's counsel was contacted by a third-party, Rian Wroblewski, Director of Open Source Cyberintelligence of Red Team Protection ("Red Team"), who informed counsel that Red Team had found documents on the Internet that appeared to belong to HealthBridge. (Id. at 2, 5; O'Brien Aff. 2/26[7] ¶¶ 2-3). Red Team also advised

---

[6]Citations to "Berdzik Dec." refer to the Declaration of Caroline J. Berdzik, Esq., dated April 23, 2009 and submitted in support of Defendant's Motions to Dismiss and Amend.

[7]Citations to "O'Brien Aff. 2/26" refer to the Affidavit of Jennifer M. O'Brien, Esq., in support of defendant's application for a temporary restraining order and preliminary injunction, filed February 27, 2009.

HealthBridge that plaintiff's computer was leaking data onto the Internet through a peer-to-peer file sharing program, such as Limewire, in which plaintiff voluntarily participated. (See Def.'s Mem. at 2). HealthBridge asserts that some of the HealthBridge documents identified by the Red Team had been produced in hard copy by plaintiff during discovery, but some had not been produced at all. (Id. at 3).

As a result of the events of February 20-23, 2009, defendant moved for a Temporary Restraining Order on or about February 27, 2009, directing plaintiff to stop the data leak from plaintiff's computer and to preserve the contents of plaintiff's hard drive. (Def.'s Mem. at 8). During a telephone conference before the undersigned on February 27, 2009, defendant explained the basis for its concern that HIPPA sensitive information was being leaked and the need of defendant to gain access to plaintiff's computer to review the documents in order to inform people whose identities, social security numbers, and protected health information had been leaked. (See 2/27/09 Tr.[8] at 3-16). Following this conference, and upon the consent of both parties, the Court Ordered plaintiff to immediately disconnect his computer from the Internet. (See Ct. Order 2/27/09[9]). On March 2, 2009, at a status conference before the undersigned, the parties agreed to resolve the issues raised by defendant's application for a Temporary Restraining Order by having HealthBridge's computer forensics expert, Intelysis, examine plaintiff's computers and image the hard drives. (Def.'s Mem. at 4; Berdzik Dec. ¶ 11). Intelysis was specifically retained to "determine the extent of [defendant's] files [that] plaintiff maintained on

_____

[8]Citations to "2/27/09 Tr." refer to the transcript of the proceedings before the undersigned on February 27, 2009.

[9]Citations to "Ct. Order 2/27/09" refer to the Order of this Court dated February 27, 2009.

his computer(s) and the extent of the leak so prophylactic measures could be taken." (Def.'s Mem. at 2-3; see also O'Brien Aff. 4/23 ¶ 12).

A principal of Intelysis examined plaintiff's computer on March 6, 2009. (Def.'s Mem. at 9). Based on his examination, which included the imaging and indexing of plaintiff's Mac G4 and iMac computers, the expert concluded that plaintiff had deleted or moved hundreds of HealthBridge files from his iMac after Red Team took its snapshot of his computer on February 23, 2009, but prior to Intelysis' forensic imaging on March 6, 2009. (Brenner Aff.[10] ¶¶ 6-7). Defendant's expert affirms that at least 99% of the deleted files are not likely to be recovered. (Id. ¶ 8). The expert also identified certain folders on plaintiff's iMac that disappeared between February 24, 2009 and March 6, 2009, including folders labeled "Liaisons," "Marketing," and "HealthBridge." (Def.'s Mem. at 10). Additionally, the expert reported that "the evidence suggests that someone may have copied hundreds of documents to an external storage device." (Id.; Brenner Aff. ¶ 9). Defendant contends that although plaintiff has yet to indicate whether he owns an external storage device, the dates of the files remaining on the hard drive suggest that "plaintiff accessed (and may have even manipulated) documents prior to producing them in discovery." (Def.'s Mem. at 10; Brenner Aff. ¶ 9). Defendant asserts that because the data was deleted from the computer before HealthBridge could review it, defendant is unable to confirm what documents were deleted, whether the ones produced were manipulated in any way, and is unable to take necessary measures to identify patients whose HIPPA information was leaked over the Internet. (Id. at 3).

---

[10]Citations to "Brenner Aff." refer to the Affidavit of Jeffrey Brenner, dated April 21, 2009, and submitted to the Court with defendant's motions to dismiss and amend.

DISCUSSION

A.    Motion to Dismiss and for Attorney's Fees and Costs

The Court first considers defendant's motion for sanctions under Rule 37 of the Federal

Rules of Civil Procedure.  Defendant asks the district court to dismiss the instant action and to

award attorney's fees and costs as a sanction for plaintiff's spoliation of evidence.

1)  Legal Standard

Rule 37 of the Federal Rules of Civil Procedure authorizes a court to impose various

sanctions when a party "fails to obey an order to provide or permit discovery."  Fed. R. Civ. P.

37(b)(2); see also Transatlantic Bulk Shipping Ltd. v. Saudi Chartering, S.A., 112 F.R.D. 185,

189 (S.D.N.Y. 1986) (noting that Rule 37(b) "provides for sanctions where a party fails to honor

its disclosure obligations, especially after court orders").  It is clear that sanctions may be

imposed when a party spoliates evidence in violation of a court order.  See, e.g., West v.

Goodyear Tire & Rubber Co. 167 F.3d 776, 779 (2d Cir. 1999) (citing John B. Hull, Inc. v.

Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176 (2d Cir. 1988)).  Even where there has

been no explicit discovery order issued, the court has the inherent power to preserve the integrity

of proceedings by, among other things, imposing sanctions for spoliation.  See id.; Kronisch v.

United States, 150 F.3d 122, 126-27 (2d Cir. 1998); Barsoum v. N.Y.C. Hous. Auth., 202 F.R.D.

396, 399 (S.D.N.Y. 2001).

The Second Circuit has defined spoliation as "the destruction or significant alteration of

8

evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d at 779; accord Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 107 (2d Cir. 2001). A party has the obligation to preserve evidence when the party is on notice "that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 436 (2d Cir. 2001) (citing Kronisch v. United States, 150 F.3d at 126); Barsoum v. N.Y.C. Hous. Auth., 202 F.R.D. at 400 (holding that a party is under an obligation to retain documents and other evidence that it knows may be relevant to a pending or future litigation). This obligation to preserve relevant documents exists whether or not the documents have been specifically requested in a demand for discovery. Barsoum v. N.Y.C. Hous. Auth., 202 F.R.D. at 400.

A party seeking sanctions for spoliation of evidence must establish that three elements are present:

> (1) that the party having control over the evidence had an
> obligation to preserve it at the time it was destroyed; (2) that the
> records were destroyed with a culpable state of mind; and (3) that
> the destroyed evidence was relevant to the party's claim or defense
> such that a reasonable trier of fact could find that it would support
> that claim or defense.

Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002); Farella v. City of New York, No. 05 CV 5711, 2007 WL 193867, at *2 (S.D.N.Y. Jan. 25, 2007); see also Fujitsu Ltd. v. Federal Express Corp., 247 F.3d at 436; Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d at 108-09; Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 220 (S.D.N.Y. 2003). It is unclear exactly what degree of culpability is required under the second prong of the

test; some courts in this Circuit have required a showing of bad faith, some have required proof of intentional destruction, and others have drawn an inference based on gross negligence. See Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d at 107-08 (citing Reilly v. NatWest Mkts. Group Inc., 181 F.3d 253, 267 (2d Cir. 1999), cert. denied, 528 U.S. 1119 (2000)). Thus, the Second Circuit has concluded that "a case by case approach is appropriate." Id. at 108.

Among the sanctions available for spoliation in federal court are the imposition of "reasonable expenses, including attorney's fees," Fed. R. Civ. P. 37(b)(2)(C), and outright dismissal. See, e.g., West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779-80 (2d Cir. 1999); Republic of the Phillippines v. Marcos, 888 F.2d 954, 956-57 (2d Cir. 1989). Since the sanction of dismissal is a "drastic remedy," the Second Circuit has cautioned that dismissal is only appropriate in "extreme circumstances, usually after consideration of alternative, less drastic sanctions." West v. Goodyear Tire & Rubber Co., 167 F.3d at 779-80 (requiring findings of willfulness, bad faith, or fault); see also Dahoda v. John Deere Co., No. 06 CV 0420, 2007 WL 491846, at *1 (2d Cir. 2007) (reversing district court's sanction of dismissal under Rule 37, where spoliating party's expert removed a piece of equipment that was relevant to the litigation, reasoning that less drastic sanctions were sufficient and the conduct was "not so egregious" as to warrant the harshest sanction of summary dismissal).

### 2) Analysis

Having reviewed the record, the Court recommends that the district court deny defendant's motion to dismiss, but respectfully recommends that plaintiff be Ordered to pay

reasonable expenses and attorney's fees on account of plaintiff's spoliation.

### a. Plaintiff Spoliated Evidence

The Court begins by considering the three elements of spoliation to determine whether sanctions should be imposed on plaintiff. See Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d at 107. Turning to the first element of the spoliation test, defendant argues that plaintiff should have known that he had an obligation to preserve the electronic data on his computers at least as early as May 2008, when defendant filed its Answer and Affirmative Defenses. (Def.'s Mem. Re: Dismiss[11] at 14). Defendant claims that plaintiff had knowledge that the documents he stored on his computers were relevant to the instant litigation, but did not produce all of these documents during discovery, despite due demand therefor. Moreover, defendant claims to have reiterated this duty to preserve evidence, including the documents on plaintiff's computer, in six separate communications to plaintiff beginning on December 16, 2008. (Id.)

Under these circumstances, it is clear that as of May, 2008, plaintiff had an obligation to maintain any and all documents relating to this case, including all documents that were stored electronically on his computers. See, e.g., Fujitsu Ltd. v. Federal Express Corp., 247 F.3d at 436; see also Cornell Research Found., Inc. v. Hewlett Packard Co., 223 F.R.D. 55, 74 (N.D.N.Y. 2003) (holding that "[t]he mere fact that information which as a matter of ordinary course of

---

[11]Citations to "Def.'s Mem. Re: Dismiss" refer to Defendant's Memorandum in Support of its Motion to Dismiss, filed on April 23, 2009.

one's business is electronically stored has been produced in functional equivalent, such as through hard copy, does not in and of itself excuse a party from producing the requested information in electronic form") (citation omitted). It is also clear that plaintiff had been informed of and knew of his obligation to preserve this information. Thus, plaintiff violated his obligation to preserve evidence when he admittedly "did delete the documents in their electronic form" on his computers. (Pl.'s Resp.[12] at 2).

Additionally, the Court finds that the deleted electronic documents are relevant to the claims and defenses in this case. See Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d at 107. Defendant argues, and plaintiff does not appear to dispute, that the files in question concern plaintiff's work for defendant. Specifically, one folder alleged to have been deleted was labeled "HealthBridge," and another, labeled "Liaisons," arguably contained information regarding the people supervised by plaintiff. Among other things, defendant cites a document that allegedly supports plaintiff's claim that he was one of defendant's most productive employees, a claim denied by defendant. (Def.'s Mem. at 7). Although this document was produced in hard copy, defendant contends that it existed in electronic form on the computer and it is now impossible to determine if there were other documents in that file or whether the documents have been altered in any way. (Id.)

Moreover, the documents that plaintiff did produce in hard copy during discovery in this case are no longer available in their electronic form. (Def.'s Mem. Re: Dismiss at 14).

--------------------------------------

[12]Citations to "Pl.'s Resp." refer to Plaintiff's Response to Defendant's Motions to Dismiss and Amend, filed on June 3, 2009.

Defendant's computer expert affirms that hundreds of documents have either been manipulated and/or copied into an external storage device. (Id. at 14-15). The absence of these electronic records may frustrate a defense that plaintiff was fired for non-discriminatory reasons, yet the precise relevance of the deleted information may never be fully ascertained because plaintiff deleted the electronic information. (See id. at 15).

Having determined that the spoliated electronic data is relevant to the claims and defenses in this case, and that plaintiff had an obligation to maintain these documents, defendant still has the burden to show that the information was destroyed knowingly or negligently. See Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d at 109. Defendant argues that plaintiff destroyed the documents with a "culpable state of mind" because he did so knowing he had an obligation to maintain and preserve the electronic documents. (Def.'s Mem. Re: Dismiss, at 14). Plaintiff admits deleting "HealthBridge-related files from both of [his] computers," but contends that he did so to avoid "inadvertently violat[ing] the law by exposing confidential patient records." (Penberg Decl. ¶ 13). Plaintiff explains that he was sure not to delete "anything which [he] had not printed out which was relevant." (Id.) According to plaintiff, he deleted the electronic files because he "did not understand . . . that [he] was supposed to keep these documents in electronic form that [defendant was saying plaintiff] possessed illegally." (Id. ¶ 14).

However, the Court is not persuaded by plaintiff's explanation. In defendant's motion for a temporary restraining order, defendant asked that plaintiff be enjoined "from destroying or altering any electronic information or data" and in a letter dated February 27, 2009, defendant explained that the purpose of the temporary restraining order included "prevent[ing] plaintiff from destroying or altering potential evidence." (Def.'s Mem. at 8-9). During the February 27

and March 2, 2009 conferences with the Court, this issue was specifically addressed and the Court encouraged the parties to work together to resolve the issues. Despite being aware of defendant's concerns,[13] plaintiff nonetheless deliberately destroyed the majority of the files and/or possibly transferred them to another storage device.

Under these circumstances, the Court is satisfied that plaintiff not only acted with the requisite degree of culpability to satisfy this prong of the spoliation test, see Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d at 107, but acted wilfully, deliberately, and in bad faith. As courts in this Circuit have made clear, even where it cannot be shown that the destruction of evidence was done willfully or in bad faith, sanctions may still be imposed upon a finding of negligence. See Indemnity Ins. Co. of N. Am. v. Liebert Corp., No. 96 CV 6675, 1998 WL 363834, at *3 (S.D.N.Y. June 29, 1998) (holding that sanctions may be awarded for spoliation not just "where the evidence was destroyed willfully or in bad faith, since a party's negligent loss of evidence can be just as fatal to the other party's ability to present a defense") (internal citation omitted); see also Great Northern Ins. Co. v. Power Cooling, Inc., No. 06 CV 874, 2007 WL 2687666, at *9 (E.D.N.Y. Sept. 10, 2007); Smith v. City of New York, 388 F. Supp. 2d 179, 189 (S.D.N.Y. 2005).

Accordingly, the Court finds that plaintiff has spoliated evidence and proceeds to the question of the appropriate sanctions to impose.

---

[13]During the conference on February 27, 2009, plaintiff's counsel affirmed that he would relay defendant's concerns to his client and report back to the Court. (2/27/10 Tr. at 17; see also Pl.'s 2/27/09 Ltr. (advising Court that counsel has discussed the issue with his client)).

b.  Sanctions

Defendant first argues that the Court should dismiss this case under Rule 37(d) of the

Federal Rules of Civil Procedure because plaintiff failed "to preserve the integrity of evidence

central to this case and, thus, has prejudiced [HealthBridge's] defense." (Def.'s Mem. Re:

Dismiss, at 12; Def.'s Rep.[14] at 5).  No other form of relief, defendant argues, would restore

defendant to the "same position it would have been in" but for plaintiff's deliberate destruction

of evidence. (Def.'s Mem. Re: Dismiss at 12; Def.'s Rep. at 5).  Defendant takes particular issue

with the fact that some documents that once existed in electronic form were only produced in

hard copy. (Def.'s Mem. at 7).  This is problematic, defendant argues, because "defendant

cannot ascertain if some of the documents previously produced in discovery were electronically

manipulated prior to production."  (Def.'s Mem. at 7).

Although plaintiff has spoliated evidence, the Court finds that outright dismissal is not an

appropriate sanction in this case.  See West v. Goodyear Tire & Rubber Co., 167 F.3d at 779-80;

Republic of the Phillippines v. Marcos, 888 F. 2d 954, 956-57 (2d Cir. 1989).  Plaintiff's conduct

– while grossly negligent and perhaps even malicious – does not constitute an "extreme

circumstance" that would justify the draconian remedy of dismissal.  See West v. Goodyear Tire

& Rubber Co., 167 F.3d at 779-80; see also Dahoda v. John Deere Co., No. 06 CV 0420, 2007

WL 491846, at *1 (2d Cir. 2007).  As an initial matter, it is unclear that plaintiff's actions will

significantly prejudice defendant because, as plaintiff argues, "every document [plaintiff] deleted

---

[14]Citations to "Def.'s Rep." refer to Defendant's Reply in Support of its Motions to
Dismiss and Amend, filed on June 19, 2009.

either came from [defendant] or was faxed by [plaintiff] to [defendant]."[15] (Penberg Decl. ¶ 13, Ex. 1) (emphasis in original). To the extent copies of certain electronic records were not in defendant's possession and were not provided in hard copy (see, e.g., Def.'s Mem. at 6-7), other sanctions, such as adverse jury inferences, exist apart from dismissal that would adequately remedy the instant spoliation.[16] See Dahoda v. John Deere Co., 2007 WL 491846, at *1 (holding that a trial court should not order dismissal for spoliation where less drastic alternatives exist); see also Fed. R. Civ. P. 37(b)(2) (providing examples of available sanctions).

Although outright dismissal does not appear appropriate in this case, the Court respectfully recommends that the district court grant defendant's request for "reasonable attorneys' fees and costs" incurred in connection with plaintiff's spoliation. (Def.'s Mem. Re: Dismiss at 15) (citing Fed. R. Civ. P. 37(b)(2)(C)). Defendant represents that it has expended thousands of dollars on account of plaintiff's spoliation in filing motions and hiring a computer forensics expert. (O'Brien Aff. 4/23 ¶ 12-14). The Court agrees with defendant that plaintiff should reimburse defendant for these fees and costs. If the district court adopts this Court's recommendation to award attorney's fees and costs, defendant is directed to submit an affidavit and supporting time records within two weeks of the district court's decision, if it wishes to

_____

[15]This is not to suggest that the electronic documents have no independent evidentiary significance apart from the hard copies that might be in defendant's possession. As defendant argues, lack of the electronic record in plaintiff's possession prevents defendant from ascertaining "if some of the documents previously produced in discovery were electronically manipulated prior to production." (Def.'s Mem. at 7).

[16]The Court has not considered whether to impose a different type of sanction other than those requested by defendant. Defendant, for instance, has not requested an adverse inference instruction. However, if defendant wishes to request additional sanctions such as an adverse inference, defendant may make a proper motion.

obtain reimbursement for fees and costs in this regard.

## B. Defendant's Motion to Amend

Should the district court adopt this Court's recommendation to deny defendant's motion to dismiss, the next issue to decide is whether to permit defendant to amend its Answer to add counter-claims for breach of fiduciary duty (see Prop. Amend. Ans. ¶¶ 40-48), and spoliation of evidence. (See id. ¶¶ 49-57).

### 1) Legal Standard

As a general matter, Rule 15(a) of the Federal Rules of Civil Procedure provides that one amendment as of right may be made at any time prior to the service of a responsive pleading. Fed. R. Civ. P. 15(a). Once a response has been filed, however, a party may amend the pleading "only by leave of court or by written consent of the adverse party." Id. Rule 15 provides that "leave shall be freely given when justice so requires." Id. This directive has been liberally construed. See Foman v. Davis, 371 U.S. 178, 182 (1962); see also Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 283 (2d Cir.), cert. denied, 531 U.S. 1035 (2000); Chapman v. YMCA of Greater Buffalo, 161 F.R.D. 21, 24 (W.D.N.Y. 1995) (noting that "[t]he stated purpose of Rule 15 is to allow a party to correct an error that might otherwise prevent the court from hearing the merits of the claim"). The decision whether to grant a party's motion to file an amended pleading lies within the discretion of the trial court. See Foman v. Davis, 371 U.S. at 182-83; see also Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (citations omitted); In re Agent Orange, 220 F.R.D. 22, 24 (E.D.N.Y. 2004).

In this regard, an amendment may be denied for a variety of reasons, "including undue delay, bad faith, undue prejudice to the opposing party, . . . futility," or where the amendment is "'unlikely to be productive.'" In re Agent Orange, 220 F.R.D. at 24 (citing cases and quoting Ruffalo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)); see also Foman v. Davis, 371 U.S. at 182; SCS Commc'ns, Inc. v. Herrick Co. Inc., 360 F.3d 329, 345 (2d Cir. 2004); Fariello v. Campbell, 860 F. Supp. 54, 70 (E.D.N.Y. 1994) (opining that the "party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial") (citation omitted).

To determine whether an amendment would cause undue prejudice, courts consider whether the amendment would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Id. (citing cases). However, "[m]ere delay," without a showing of bad faith or prejudice, is not sufficient grounds for a court to deny leave to amend. See Block v. First Blood Assocs., 988 F.2d at 350 (citation omitted); see also United States v. Cont. Ill. Nat'l Bank & Trust Co. of Chicago, 889 F.2d 1248, 1254-55 (2d Cir. 1989). It follows that a court may deny leave to amend where there has been "inordinate delay" without a "satisfactory explanation" offered and prejudice to the non-moving party is shown. See Scottish Air Int'l, Inc. v. British Caledonian Group, PLC, 152 F.R.D. 18, 22 (S.D.N.Y. 1993).

2) Analysis

Plaintiff opposes the proposed amendments as unduly prejudicial and futile. (Pl.'s Resp.

at 3-4; see also Penberg Decl. ¶ 16). With regard to undue prejudice, plaintiff claims that allowing these proposed amendments would "necessitate a whole new expansive round of litigation, just as discovery was drawing to a close." (Id.) This is due in part to plaintiff's suggestion that these proposed amendments would cause plaintiff to "reply . . . with his own counterclaim alleging retaliation," thus causing even more litigation. (Pl.'s Resp. at 4; see also Penberg Decl. ¶ 16). Plaintiff also claims that he is behind on his attorney bills and requiring additional discovery would "seriously harm[]" his ability to continue this litigation. (Id.) Defendant disputes this argument, contending that the proposed amendments would not require plaintiff to expend significant additional resources on this litigation since plaintiff is aware of all circumstances giving rise to these claims. (Def.'s Mem. Re: Amend[17] at 13). To the contrary, if the Court denied the proposed amendments, defendant argues that it would be unduly prejudiced because it would be "deprived" of the ability to assert all potential claims against plaintiff in this litigation, and would be forced to initiate separate proceedings. (Id.)

Having reviewed the record, the Court finds that plaintiff has not met his burden to establish that permitting the proposed amendment to add claims of breach of fiduciary duty would be unduly prejudicial.[18] See Fariello v. Campbell, 860 F. Supp. at 70. Although granting leave to amend may slightly delay the completion of discovery in this case, the Court has not yet set a date for the close of discovery and it is unclear to the Court that the proposed amended

---

[17]Citations to "Def. Mem. Re: Amend" refer to Defendant's Memorandum in Support of its Motion to Amend, filed on April 23, 2009.

[18]The Court does not address the issue of prejudice insofar as it concerns the proposed amendment relating to spoliation of evidence because the Court concludes that adding a spoliation claim would be futile. (See discussion infra at 23-24).

claims would require much additional discovery. (Def.'s Mem. Re: Amend at 12). Indeed, to the extent any additional discovery is warranted, the scope of such discovery would be limited and minimally intrusive as much of the relevant information has already been uncovered during the events leading up to this motion.[19]

Moreover, defendant filed its motion to amend promptly once it discovered the facts giving rise to the proposed claims; thus, plaintiff is not unduly prejudiced by the timing of this amendment. See Scottish Air Int'l, Inc. v. British Caledonian Group, PLC, 152 F.R.D. at 22 (noting that trial court may deny amendment for "inordinate delay"). Indeed, this is the first instance that defendant has sought leave to amend, and the facts giving rise to the amendment did not occur until long after the filing of the initial Complaint. Under such circumstances, the Court finds that there was no unreasonable delay or improper motive that would justify denying defendant's motion for leave amend.

a) Breach of Fiduciary Duty - Futility

Plaintiff also contends that the amendment should be denied on the grounds of futility. See Ruffalo v. Oppenheimer & Co., 987 F.2d at 131. In seeking to add a counterclaim for breach

---

[19]The Court rejects the argument that plaintiff will be unduly prejudiced by the proposed amendments because granting defendant leave to amend would cause plaintiff to seek leave to file his own amendment adding a claim for retaliation, thus giving rise to even more discovery. (Pl.'s Resp. at 4). Whether plaintiff seeks to amend his Complaint in the future is ancillary to the instant motion; the Court cannot consider a party's hypothetical, future strategic maneuvering in considering whether to grant leave to amend. The Court similarly rejects plaintiff's argument that the proposed amendment is unduly prejudicial to plaintiff because the attendant discovery would make it financially difficult for plaintiff to continue with this litigation. Not only did plaintiff engage in the conduct giving rise to the proposed counterclaims, but he chose to initiate this litigation, thus exposing himself to the risk of counterclaims. See Fed. R. Civ. P. 13.

of fiduciary duty, defendant claims that plaintiff violated defendant's Confidentiality Policy regarding HealthBridge information that was reiterated in plaintiff's Separation Agreement and General Release (the "Agreement"), which plaintiff signed upon his departure. (Def.'s Mem. at 5; see also O'Brien Aff. 4/23 ¶¶ 6-9). Specifically, defendant states that Paragraph 8 of the Agreement contained a provision entitled Non-Disclosure of Proprietary and Confidentiality Information, which prohibited plaintiff from disclosing proprietary or confidential information, including patient information. (Def.'s Mem. at 5-6). Additionally, Paragraph 11, in a provision entitled Return of Company Property after his employment has ceased, required plaintiff to return any company property and to not access any company property. (Id.) Defendant in its Proposed Amended Answer further alleges, among other things, that plaintiff was aware of defendant's policies concerning "the protection of confidential and proprietary information" and violated such policies. (See Prop. Amend. Ans. ¶¶ 40-48).

With regard to this proposed breach of fiduciary duty claim, plaintiff contends that such a claim would be futile because there is no evidence that defendant had a document retention policy or that plaintiff was aware that his computer was leaking information onto the Internet. (Pl.'s Resp. at 3). Specifically, plaintiff affirms that "[a]t no time" was he ever informed of any policy concerning obligations with respect to documents stored on his computer. (Penberg Decl. ¶ 8). He further affirms that upon his termination in 2007, "no one said anything about an obligation to return papers." (Id. ¶ 9). In fact, plaintiff claims that he did not receive the separation agreement until "[s]everal days" after he was terminated. (Id. ¶ 9(b), Exs. 1-3). Plaintiff claims that when the Separation Agreement revealed that he was to receive only four

months of severance, he did not read any further because this amount was unacceptable to him.[20] (Id. ¶ 9(c)). As a result, plaintiff does not believe he is bound by the agreement, including its non-disclosure clause, because he did not accept the money being offered. (Id. (further noting that "[n]othing in paragraph 8 of the Separation Agreement was ever given or stated to me while I was employed")).

Aside from issues concerning the Separation Agreement, plaintiff affirms that he "never used [his] HealthBridge contacts in an effort to find myself new work." (Id. ¶ 10). In fact, plaintiff contends that he never looked at any HealthBridge document he has in his possession until after his deposition in December 2008. (Id. ¶ 9(c)). He did not print out what he has on his computer "since defendant already had every document on my computer." (Id. ¶ 10). At plaintiff's deposition, plaintiff recalls that he agreed to print out documents on his computer to be forwarded by his attorney to defendant. (Id. ¶ 11, Ex. 4).

These factual allegations by plaintiff, however, are insufficient to establish as a matter of law that plaintiff did not breach a fiduciary duty owed to defendant. Accepting defendant's allegations as true for purposes of this motion, the Court cannot find as a matter of law that defendant's proposed claim for breach of fiduciary duty is without merit or that defendant will be unable to prove a set of facts to prove its claim. See Pangburn v. Culbertson, 200 F.3d 65, 70-71 (2d Cir. 1999) (opining that "while futility is a valid reason for denying a motion to amend, this is true only where it is beyond doubt that the [moving party] can prove no set of facts in support

---

[20]Defendant notes that on August 19, 2007, plaintiff confirmed in writing that he had read the Separation Agreement and General Release, which set forth these confidentiality obligations. (Def.'s Mem. at 6; O'Brien Aff. 4/23 ¶ 8, Ex. B).

of his amended claims"). Accordingly, the Court respectfully recommends that defendant be permitted to amend its Answer to add a counterclaim for breach of fiduciary duty.

### b) Spoliation Claim – Futility

With regard to defendant's proposed counterclaim of spoliation, plaintiff contends that the amendment should be denied because the independent tort of spoliation does not exist. (See Pl.'s Resp. at 3 (stating that "defendant . . . has created a tort called 'spoliation' as part of its counterclaim"). Defendant does not directly respond to this argument; in fact, neither party cites to a single legal precedent, case or statute discussing whether a claim for spoliation is viable under New York law.[21]

The New York Court of Appeals has not definitively determined whether first-party spoliation may constitute a cause of action under New York law. See, e.g., MetLife Auto & Home v. Joe Basil Chevrolet, 1 N.Y.3d 478, 483-84, 807 N.E.2d 865, 775 N.Y.S.2d 754 (2004) (declining to reach the question of negligent spoliation as an independent tort). Cf. Ortega v. City of New York, 9 N.Y.3d 69, 876 N.E.2d 1189, 845 N.Y.S.2d 773 (2007) (holding that an action for third-party spoliation does not exist under New York law). However, it is clear that New York courts have traditionally remedied spoliation through litigation sanctions, rather than

---

[21]Defendant did not indicate which state's law provides the basis for defendant's proposed tort claim for spoliation. This is particularly troubling in light of plaintiff's Complaint, which asserts claims under both New York and Massachusetts law. Since Massachusetts law, like that of New York, does not permit a cause of action for spoliation, see, e.g., Keene v. Brigham and Women's Hosp., Inc., 786 N.E. 2d 824, 840 n.4 (Mass. 2003) (holding: "there cannot be a separate cause of action in tort for spoliation of evidence"), the Court proceeds as if defendant seeks leave to add a claim for spoliation under New York law.

through claims for tort liability. See, e.g., MetLife Auto & Home v Joe Basil Chevrolet, 1

N.Y.3d at 483-83. Perhaps as a result, courts confronting the issue have generally held that the

tort of spoliation does not exist under New York law. See, e.g., Haym Salomon Home for Aged,

LLC v. HSB Grp., Inc., No. 06 CV 3266, 2010 WL 301991, at *7 (E.D.N.Y. Jan. 20, 2010)

(holding that "[s]poliation of evidence is not an independent cause of action under New York

law"); Amadsau v. Bronx Hosp. Ctr., No. 03 CV 6450, 2005 WL 121749, at *9 (S.D.N.Y. Jan.

21, 2005) (dismissing spoliation claim, holding that "it is well settled that New York courts do

not recognize the tort of spoliation of evidence") (adopting report and rec., Amadasu v.

Rosenberg, 03 CV 6450, 2005 WL 954916 (S.D.N.Y. Apr. 26, 2005)), aff'd, 225 Fed. Appx. 32

(2d Cir. 2007); Tietjen v. Hamilton-Beach/Proctor-Silex, Inc., No. 97 CV 188, 1998 WL 865586,

at *3 (N.D.N.Y. Nov. 25, 1998) (holding that "[t]he New York courts follow the majority view

and do not view spoliation of evidence as a legally cognizable tort action").

Accordingly, since such a claim is not cognizable under New York law, the Court

respectfully recommends that defendant's proposed amendment to add a claim of spoliation be

denied.[22]

---

[22]The Court notes that even in the absence of a separate claim for spoliation, the Federal
Rules of Civil Procedure provide a more than adequate mechanism for dealing with issues of
spoliation, and indeed, the customary procedure in this Court is to proceed by way of a motion
for sanctions as a result of spoliation as was done in this case. See, e.g., Reilly v. Natwest Mkts.
Grp., Inc., 181 F.3d 253, 267 (2d Cir. 1999).

## CONCLUSION

For the reasons stated above, the Court respectfully recommends that the district court deny defendant's motion to dismiss, but grant its request for attorney's fees and costs in connection with plaintiff's spoliation of evidence. The Court further recommends that the district court deny defendant's motion to amend its Answer to include a claim for spoliation of evidence, but grant its motion to amend its Answer to include a claim for breach of fiduciary duty.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b); Small v. Secretary of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to mail copies of this Report and Recommendation to the parties.

**SO ORDERED.**

Dated: Brooklyn, New York
      March 29, 2010

                                        Cheryl L. Pollak
                                        United States Magistrate Judge
                                        Eastern District of New York