UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
MARC PENBERG,

                Plaintiff,                     **R E P O R T   A N D**
                                                   **RECOMMENDATION**

        - against -                         08 CV 1534 (SJF)

HEALTHBRIDGE MANAGEMENT,

                Defendant.
--------------------------------------------------------X

      On April 14, 2008, plaintiff Marc Penberg commenced this action against HealthBridge

Management ("HealthBridge"), alleging disability discrimination in violation of the Americans

with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., age discrimination in violation of the

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., as well as

violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq., the New York

State Human Rights Law ("NYSHRL") §§ 296 et seq., the New York City Human Rights Law

("NYCHRL") §§ 8-101 et seq., and the Massachusetts Fair Employment Act ("MFEA").

(Compl.[1] ¶ 1).

      On April 23, 2009, defendant moved for various forms of relief based on plaintiff's

alleged spoliation of evidence. The district court denied defendant's Motion to Dismiss the

Complaint, but granted permission for defendant to amend its Answer to add a counterclaim

alleging a breach of fiduciary duty. The court also adopted this Court's recommendation that

sanctions be imposed in the nature of an award to defendant of attorney's fees and costs pursuant

to Fed. R. Civ. P. 37 based on the spoliation of evidence.

---

[1]Citations to "Compl." refer to plaintiff's Complaint, filed on April 14, 2008.

1

On July 27, 2010, plaintiff filed an Answer to defendant's counterclaim and asserted his own counterclaim against defendant, alleging retaliation under the ADEA and NYSHRL. By Notice of Motion dated August 17, 2010, defendant then moved to dismiss plaintiff's counterclaim as improperly filed. By Order dated September 22, 2010, this motion was referred to the undersigned.

In response to defendant's Motion to Dismiss, plaintiff agreed voluntarily to dismiss his counterclaim, but sought permission to file an amended Complaint asserting retaliation claims under the ADEA, FMLA, and NYSHRL.[2] By Order dated September 17, 2010, the plaintiff's Motion to Amend[3] was referred to the undersigned. For the reasons set forth below, it is respectfully recommended that plaintiff's Motion to Amend be granted.

## BACKGROUND

The factual background leading to this dispute is set forth more fully in this Court's earlier Report and Recommendation dated March 29, 2010. For purposes of this motion, the Court has summarized the most pertinent facts.

Defendant Healthbridge manages rehabilitation and skilled nursing facilities in nine states. (Compl. ¶ 5; O'Brien Aff. 4/23[4] ¶ 2). Plaintiff, a former employee of defendant, was, at

---

[2]Defendants's Motion to Dismiss plaintiff's counterclaim is therefore moot. Furthermore, the plaintiff no longer seeks to pursue claims of abuse of process, malicious prosecution, or claims under the NYCHRL.

[3]In a separate Order dated July 28, 2010, the district court also referred to the undersigned the calculation of attorney's fees and costs to be awarded to defendant as a spoliation sanction. That issue will be dealt with in a separate Report.

[4]Citations to "O'Brien Aff. 4/23" refer to the Affidavit of Jennifer M. O'Brien, Esq. in Support of Defendant's Motions to Dismiss, filed on April 23, 2009.

the time of his termination in August 2007, a business development manager and part of a sales team in New York that placed patients in HealthBridge facilities in other states. (Compl. ¶¶ 5, 8). Plaintiff worked out of his home and "prepare[ed] certain documents on [his] computer," including patient assessments, personnel evaluations of his subordinates, and sales reports, which he would fax to his supervisors at HealthBridge. (Penberg Decl.[5] ¶¶ 5, 6). Although plaintiff was issued a company laptop, he preferred Apple computers, so he used his personal computer to conduct HealthBridge business. (Def.'s Mem.[6] at 5; Penberg Decl. ¶¶ 3-4; O'Brien Aff. 4/23 ¶ 5). Defendant claims that it was unaware that plaintiff was using his home computer to conduct HealthBridge business. (Def.'s Mem. at 5; O'Brien Aff. 4/23 ¶ 5).

In 2006, plaintiff underwent coronary bypass surgery and was unable to work for 12 weeks. (Compl. ¶¶ 9, 10). Plaintiff alleges that his annual review was subsequently cancelled and he was denied a pay increase. (Id. ¶ 10). Upon his return to work, plaintiff claims to have "resumed providing the outstanding service he had previously provided." (Id. ¶ 12). On or about August 17, 2007, plaintiff was advised that his position was being eliminated because of a "regional reorganization." (Id. ¶ 13).

On April 14, 2008, plaintiff filed the instant Complaint against defendant, alleging that defendant discharged him "because of his disabilities, because of the perception that his disabilities might cause additional absences, because he had exercised his right to a 12-week medical leave, and because of his age." (Id. ¶ 14). In his Complaint, plaintiff requests

---

[5]Citations to "Penberg Decl." refer to the Declaration of Marc Penberg in Opposition to Defendant's Motion to Amend and Dismiss, filed on June 3, 2009.

[6]Citations to "Def.'s Mem." refer to the Defendant's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 37 and for Attorney's Fees and Costs, dated April 23, 2009 and filed with the Court on June 17, 2009.

reinstatement, back pay, $1 million in damages for emotional distress, $1 million in punitive

damages, as well as attorney's fees and costs, and "such other and further relief as is just and

equitable." (Id. at 5). Defendant filed its Answer on May 13, 2008, denying plaintiff's

allegations and asserting twenty-nine affirmative defenses. (Def.'s Ans.[7]).

On or about February 20, 2009, during the course of discovery, defendant learned that

plaintiff had maintained certain confidential and proprietary information relating to Healthbridge

patients and employees on his personal computer, which was, according to defendant, a violation

of its policy that all Company property be returned at the time of separation. (Def.'s Mem. at 2,

5-6; O'Brien Aff. 4/23 ¶ 6). Defendant demanded that plaintiff return all such confidential

documents and advised plaintiff that many of the documents plaintiff produced in discovery

contained confidential information that may be subject to the Health Insurance Portability and

Accountability Act (HIPAA). (See Berdzik Decl.[8] ¶ 7, Exs. A, D).

On February 23, 2009, defendant's counsel was contacted by the Director of Open

Source Cyberintelligence of Red Team Protection ("Red Team"), who indicated that documents,

which appeared to belong to HealthBridge, had been leaked onto the Internet from plaintiff's

computer through a peer-to-peer file sharing program. (Def.'s Mem. at 2, 7; O'Brien Aff. 2/27[9]

¶¶ 2-3). Defendant moved for a Temporary Restraining Order seeking to prevent plaintiff from

continuing to leak data onto the Internet and to have plaintiff preserve the contents of his hard

---

[7]Citations to "Def.'s Ans." refer to Defendant's Answer, filed on May 13, 2008.

[8]Citations to "Berdzik Decl." refer to the Declaration of Caroline J. Berdzik in support of defendant's application for injunctive relief, filed on February 27, 2009.

[9]Citations to "O'Brien Aff. 2/26" refer to the Affidavit of Jennifer M. O'Brien, Esq., in support of defendant's application for a temporary restraining order and preliminary injunction, filed February 27, 2009.

drive. (Def.'s Mem. at 8). The plaintiff was directed to immediately disconnect his computer from the Internet, and a computer forensics expert, Intelysis, proceeded to examine plaintiff's computers and image the hard drives. (See Ct. Order 2/27/09;[10] Def.'s Mem. at 4, 8; Berdzik Decl. ¶ 11). Based on this examination, the expert concluded that plaintiff had deleted or moved hundreds of HealthBridge files from his iMac after Red Team took its snapshot of his computer on February 23, 2009, but prior to Intelysis' forensic imaging on March 6, 2009. (Brenner Aff.[11] ¶¶ 6-7). According to the expert, at least 99% of the deleted files were not likely to be recovered, and it appeared that "someone may have copied hundreds of documents onto an external storage device." (Id. ¶¶ 8, 9).

The defendant then filed a motion seeking to: 1) dismiss the action and award attorney's fees and costs as a sanction for plaintiff's conduct; or 2) permit defendant to amend its Answer to add counterclaims for breach of fiduciary duty (see Prop. Amend. Ans.[12] ¶¶ 40-48), and spoliation of evidence. (See id. ¶¶ 49-57). Although the court granted the motion for sanctions in the form of fees and costs, it declined to dismiss the Complaint and only allowed the defendant to amend its Answer to add a counterclaim for breach of fiduciary duty.

Plaintiff thereafter filed an Answer to the new counterclaim, and, without seeking permission of the Court or the defendant, asserted his own counterclaims to defendant's

---

[10]Citations to "Ct. Order 2/27/09" refer to the Order of this Court directing plaintiff to immediately disconnect his computer from the internet, dated February 27, 2009.

[11]Citations to "Brenner Aff." refer to the Affidavit of Jeffrey Brenner, dated April 21, 2009, and filed with the Court with defendant's Motion to Dismiss and Amend on April 23, 2009.

[12]Citations to "Prop. Amend. Ans." refer to defendant's Proposed Amended Answer filed with defendant's Notice of Motion for Leave to Amend on April 23, 2009.

counterclaim, including claims of retaliation under the ADEA and the NYSHRL, abuse of process, and malicious prosecution. When defendant moved to dismiss the counterclaims because plaintiff had failed to comply with Rule 15(a) of the Federal Rules of Civil Procedure, and pointed out that the proper method for asserting these new claims was by amending his Complaint, plaintiff submitted a Memorandum of Law dated September 14, 2010, offering to dismiss voluntarily the new counterclaims and instead seeking permission to file an amended complaint, alleging claims of retaliation under the ADEA, FMLA, and Section 296 of the NYSHRL.

DISCUSSION

A. Plaintiff's Motion to Amend

    1) Legal Standard

As noted in this Court's earlier Report and Recommendation regarding the defendant's Motion to Amend, the Federal Rules of Civil Procedure provide that a party may amend a pleading only by leave of court or by written consent of the adverse party. Fed. R. Civ. P. 15(a)(2). The Rule provides that "[t]he court should freely give leave when justice so requires," id., and courts have liberally construed this directive. See Foman v. Davis, 371 U.S. 178, 182 (1962); see also Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 283 (2d Cir. 2000), cert. denied, 531 U.S. 1035 (2000); Chapman v. YMCA of Greater Buffalo, 161 F.R.D. 21, 24 (W.D.N.Y. 1995) (noting that "[t]he stated purpose of Rule 15 is to allow a party to correct an error that might otherwise prevent the court from hearing the merits of the claim").

Although the decision to grant a party's motion to file an amended pleading lies within

the discretion of the trial court, see Foman v. Davis, 371 U.S. at 182; see also Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995); In re 'Agent Orange' Prods. Liab. Litig., 220 F.R.D. 22, 24 (E.D.N.Y. 2004), the court should consider a number of factors, "including undue delay, bad faith, undue prejudice to the opposing party, or futility," id. (citations omitted), or whether the amendment is "'unlikely to be productive.'" Id. (quoting Ruffalo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)); see also Foman v. Davis, 371 U.S. at 182; SCS Commc'ns, Inc. v. Herrick Co., Inc., 360 F.3d 329, 345 (2d Cir. 2004); Fariello v. Campbell, 860 F. Supp. 54, 70 (E.D.N.Y. 1994) (opining that the "party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial") (citation omitted).[13] Where there has been "inordinate delay" without a "satisfactory explanation" offered and prejudice to the non-moving party is shown, the Court may deny the motion to amend. Scottish Air Int'l, Inc. v. British Caledonian Group, PLC, 152 F.R.D. 18, 29 (S.D.N.Y. 1993).

    2) Analysis

    In this case, defendant opposes the proposed amendment as futile because plaintiff will be unable to make out a prima facie case of retaliation under the ADEA and the NYSHRL. (Def.'s Second Mem.[14] at 8-11). Specifically, plaintiff's proposed amended claims allege that in

---

[13]To determine whether an amendment would cause undue prejudice, courts consider whether the amendment "would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." In re 'Agent Orange' Prods. Liab. Litig., 220 F.R.D. at 25 (quoting Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)) (emphasis in original). However, "[m]ere delay," without a showing of bad faith or prejudice, is not sufficient grounds for a court to deny leave to amend. Id.; see also United States v. Cont'l Ill. Nat'l Bank & Trust Co., 889 F.2d 1248, 1254-55 (2d Cir. 1989).

[14]Citations to "Def.'s Second Mem." refer to Defendant's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Counterclaim, dated August 17, 2010 and filed with the Court on September 21, 2010.

pursuing the breach of fiduciary duty claim against the plaintiff for the spoliation of evidence, defendant engaged in retaliation against the plaintiff.

Claims under the ADEA and the NYSHRL are generally analyzed using the same factors. See Carras v. MGS 728 Lex, Inc., 310 Fed. Appx. 421, 422 n.1 (2d Cir. 2008). Prior to the Supreme Court's decision in Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006), a plaintiff seeking to establish a prima facie case of retaliation under either of these statutes was required to show that: 1) he engaged in a protected activity; 2) the employer was aware of the activity; 3) the employer took an adverse action against the plaintiff; and 4) there was a causal connection between the protected activity and the adverse action. Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 107 (2d Cir. 2010); Illiano v. Mineola Union Free Sch. Dist., 585 F. Supp. 2d 341, 352 (E.D.N.Y. 2008). Cases interpreting this test required a showing that the "retaliatory motive played a part in the adverse employment action." Cifra v. G.E. Co., 252 F.3d 205, 216 (2d Cir. 2001).

In Burlington Northern, however, the Supreme Court made it clear that the anti-retaliation provision is "not limited to discriminatory actions that affect the terms and conditions of employment." 548 U.S. at 64; see also Illiano v. Mineola Union Free Sch. Dist., 585 F. Supp. 2d at 352; Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 207 (2d Cir. 2006) (citations omitted). The Court explained that "the means by which an employer can retaliate against an employee are not limited to altering his compensation, terms, conditions, or privileges of employment," and that limiting the retaliation provision to "employment-related actions would not deter the many forms that effective retaliation can take." Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d at 208 (citations omitted). Thus, courts have found retaliation in cases where, after termination, the employer engaged in blacklisting of the former employee,

8

sullied the employee's reputation, see, e.g., Wanamaker v. Columbian Rope Co., 108 F.3d 462, 465-66 (2d Cir. 1997), or where an employee was transferred to the same job title but stripped of his responsibilities. See, e.g., Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d at 209-11.

The test for actionable retaliation, as articulated by the Court in Burlington Northern, is whether "the employer's actions [are] harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." 548 U.S. at 57. Relying on this test, the court in Illiano v. Mineola Union Free School District denied, at the pleading stage, a motion to dismiss a claim that the plaintiff's former employer explicitly threatened to sue her if she sought to vindicate her rights. 585 F. Supp. 2d at 352. The court held that the primary purpose of the anti-retaliation provisions – to "'maintain unfettered access to statutory remedial mechanisms'"– would be served by allowing the plaintiff to proceed with her claims. Id. (quoting Burlington Northern, 548 U.S. at 64). The court in Illiano found that threatening the plaintiff with a lawsuit was certainly "the type of adverse action that might dissuade a reasonable former employee from bringing a discrimination claim," and that it was therefore immaterial that the plaintiff was no longer an employee when her former employer threatened to sue her. Id.

In moving to amend to add a claim of retaliation, plaintiff argues that under this Burlington Northern test, his claim that the defendant engaged in impermissible retaliation by filing the breach of fiduciary duty claim is not futile. He contends that defendant retaliated against him by adding its breach of fiduciary duty claim only because plaintiff "presented evidence . . . which undercut the company's defense that plaintiff was chosen for layoff because

he did not have the ability or skill-set to do patient evaluations." (Pl.'s Mem.[15] at 4). Plaintiff

argues that the defendant's claim is without merit because plaintiff was never advised of any

confidentiality policy and was never asked to return any documents. Plaintiff argues that his

retaliation claim is viable and should be allowed to proceed because any "reasonable employee

faced with the defendant employer's onslaught," including allegations of a leak from plaintiff's

computer, claims of a breach of fiduciary duty, and a demand for $55,000 in attorney's fees and

costs, "would not only be dissuaded from pursuing a claim, he or she would run away and hide –

no matter how viable the original claim was." (Id. at 3-4). Based on this "hysterical series of

events," plaintiff contends that under the Burlington Northern test, he should be permitted to

pursue his claim of retaliation.

In response, defendant argues that the breach of fiduciary duty claim is too far removed in

time from plaintiff's employment relationship to fall within either of the statutes cited. (Def.'s

Rep.[16] at 3-4). However, as noted above, the court in Illiano found that a threatened lawsuit, even

after the termination of plaintiff's employment, had the potential "to deter [plaintiff] from

continuing with [plaintiff's] own lawsuit," and that such a claim of retaliation could therefore

survive a motion to dismiss. 585 F. Supp. 2d at 352. More to the point, defendant argues that

the counterclaim was added based on plaintiff's own misconduct in this litigation by willfully

destroying electronic files. (Id. at 4). Defendant argues that "[p]laintiff's position turns the

retaliation provisions of the employment laws from a shield protecting employees from unlawful

---

[15]Citations to "Pl.'s Mem." refer to plaintiff's Memorandum of Law in Opposition to Motion to Dismiss Counterclaim and in Support of Motion for Leave to File First Amended Complaint, filed with the Court on September 15, 2010.

[16]Citations to "Def.'s Rep." refer to Defendant's Reply Brief in Further Support of its Motion to Dismiss Plaintiff's Counterclaim and in Opposition to Plaintiff's Cross-Motion for Leave to File an Amended Complaint, filed with the Court on September 21, 2010.

retaliatory conduct, into a sword to prevent employers from pursuing a complete defense of the action against them or seeking vindication of their rights under the applicable laws." (Id.) This argument fails, however, because the breach of fiduciary duty claim in this case is not simply a defense or position taken with respect to plaintiff's employment discrimination claim; it is a separate and independent claim altogether.

Defendant also argues that because three years have passed since the alleged discriminatory conduct and more than two years have passed since the EEOC issued the original Notice of Right to Sue letter, plaintiff's Motion to Amend should be denied for failure to exhaust administrative remedies. (Id. at 5-6). The cases that defendant cites, however, do not directly support this proposition. It is true, as defendant notes, that although claims for retaliation are generally considered to be "reasonably related" to the underlying charge of discrimination, see, e.g., Butts v. City of New York Dep't of Housing Pres. & Dev., 990 F.2d 1397, 1401-03 (2d Cir. 1993), courts have held that the initial charge of discrimination must not be too far removed from the alleged act of retaliation. See, e.g., Pinckney v. New York City Police Dep't, 01 CV 2437, 01 CV 6515, 2005 WL 282870, at *2 (E.D.N.Y. Feb. 3, 2005); Owens v. West, 182 F. Supp. 2d 180, 194 (D. Mass. 2001); Alungbe v. Bd. of Trustees of Conn. State Univ. Sys., 283 F. Supp. 2d 674, 682 (D. Conn. 2003). However, this alone does not lead to the conclusion that, because of the passage of time since plaintiff's termination or since the issuance of the original EEOC Notice of Right to Sue letter, plaintiff's Motion to Amend should be denied for failure to exhaust administrative remedies.

In Pinckney v. New York City Police Department, the defendant was granted summary judgment on a claim of retaliation because of a three year "temporal gap" between the filing of the plaintiff's initial discrimination complaint and the subsequent retaliatory acts of suspension

and transfer. 2005 WL 282870, at *2. In <u>Pinckney</u>, the plaintiff's claim failed because she had not filed an EEOC charge within 300 days of her suspension and transfer, which retaliation the court found was not sufficiently "reasonably related" or causally connected to her original claim of employment discrimination to make out a prima facie case. <u>Id.</u> However, this is not the same type of retaliation at play in this case; here plaintiff alleges retaliation in the form of a counterclaim intended to dissuade plaintiff from further pursuing his discrimination case. Furthermore, the defendant initially requested permission to add its breach of fiduciary duty counterclaim in April of 2009, only one year after plaintiff initiated this lawsuit. It is therefore not sufficiently clear that the retaliation alleged is so far removed as to be unrelated to the initial discrimination claims and to warrant a denial of plaintiff's Motion to Amend his Complaint.

Furthermore, in <u>Butts,</u> another case that the defendant relies upon, the Second Circuit explained the justifications for excusing the EEOC charge requirements for retaliation claims: "We see no reason why a retaliation claim must arise before administrative proceedings terminate in order to be reasonably related." <u>Butts v. City of New York Dep't of Housing Pres. & Dev.</u>, 990 F.2d at 1402 (quoting <u>Malarkey v. Texaco, Inc.</u>, 983 F.2d 1204, 1209 (2d Cir. 1993)). The Second Circuit also went on to note that:

> The EEOC already will have had the opportunity to investigate and mediate the claims arising from the underlying discriminatory acts alleged. Due to the very nature of retaliation, the principle benefits of EEOC involvement, mediation of claims and conciliation, are much less likely to result from a second investigation. Indeed, requiring a plaintiff to file a second EEOC charge under these circumstances could have the perverse result of promoting employer retaliation in order to impose further costs on plaintiffs and delay the filing of civil actions relating to the underlying acts of discrimination.

<u>Id.</u> This explanation further reinforces this Court's recommendation that plaintiff be permitted to

amend his complaint to add the retaliation claim.

Therefore, although the Court previously found that there was no improper motive that would justify denying defendant's motion to add the breach of fiduciary duty claim, the factual allegations regarding plaintiff's breach of a confidentiality provision and misappropriation of company documents do not establish as a matter of law that the defendant did not file the breach of fiduciary duty claim in retaliation for plaintiff's lawsuit. As required by the aforementioned legal standard that applies to this motion, this Court accepts plaintiff's allegations as true, that he had no knowledge of any confidentiality policy and that he was never asked to return any documents to the defendant. Plaintiff claims that the defendant therefore had no legitimate basis for its breach of fiduciary duty claim and that it was simply an act of retaliation. Based on the foregoing, the Court cannot find as a matter of law that plaintiff's proposed claim of retaliation is without merit or that plaintiff will be unable to prove a set of facts to establish his claim. See Pangburn v. Culbertson, 200 F.3d 65, 70-71 (2d Cir. 1999) (opining that "while 'futility' is a valid reason for denying a motion to amend, this is true only where it is 'beyond doubt that the [moving party] can prove no set of facts in support' of his amended claims") (citations omitted).

Accordingly, the Court respectfully recommends that plaintiff be permitted to amend his Answer to add a claim of retaliation.

## CONCLUSION

For the reasons stated above, the Court considers defendant's Motion to Dismiss Plaintiff's Counterclaim moot. The Court, however, respectfully recommends that the district court grant plaintiff's Motion to Amend his Complaint to add a claim of retaliation.

Any objections to this Report and Recommendation must be filed with the Clerk of the

Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to mail copies of this Report and Recommendation to the parties.

**SO ORDERED**.

Dated: Brooklyn, New York
October 18, 2010

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York