UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MARC PENBERG,

                    Plaintiff,

                                                    **ORDER**

          - against -

                                                    08 CV 1534 (CLP)

HEALTHBRIDGE MANAGEMENT,

                    Defendant.
-------------------------------------------------------X


          On March 29, 2010, this Court issued a Report and Recommendation ("the Report")

recommending that defendant HealthBridge Management ("HealthBridge") be awarded

attorneys' fees and costs in connection with the spoliation of evidence by plaintiff Marc Penberg.

(Report at 10-11, 16, 25). Pursuant to the district court's Order of July 9, 2010, adopting the

Report, HealthBridge submitted an application for counsel fees in the amount of $33,696.00

charged by defendant's counsel, Buchanan Ingersoll & Rooney P.C. (the "Firm"), and costs

totaling $21,896.34, including computer forensic expert fees, electronic research, postage, and

overnight courier expenses. (Moran Decl.[1] ¶¶ 1-2, 5). By Order dated July 28, 2010, defendant's

application was referred to the undersigned.[2]

---

[1]Citations to "Moran Decl." refer to the Declaration of Sandra S. Moran, Esq., in Support
of Defendant's Application for Attorneys['] Fees and Costs, and Exhibit A attached thereto,
dated July 23, 2010.

[2]On October 13, 2010, the parties consented to the jurisdiction of the undersigned for all
purposes.

<u>DISCUSSION</u>

The facts and circumstances leading to the award of spoliation sanctions are set forth in the Court's earlier Report and incorporated by reference herein. For purposes of this motion for fees and costs, the Court repeats certain relevant facts.

In February of 2009, defendant HealthBridge received information from a third party that documents relating to HealthBridge and its patients were being "leaked" onto the internet from plaintiff's computer through a peer to-peer-file sharing device. (<u>See</u> Report at 5-6). Defendant also asserted that plaintiff had failed to produce certain of the "leaked" documents during the course of discovery. (<u>Id.</u> at 6). Defendant therefore sought a temporary restraining order to prevent further leaks and spoliation of evidence, and retained a forensic computer expert, Intelysis Corp., to conduct a review of plaintiff's computer in an effort to determine the extent of the spoliation, what data had been deleted from the computer, and what information, if any, could be recovered. (<u>Id.</u> at 6-7). In addition to expert time and fees, HealthBridge's counsel seeks fees for time expended consulting with the client, communicating with the expert, investigating the spoliation, communicating with the Court and opposing counsel, conducting legal research, preparing and submitting motion papers for defendant's Motion to Dismiss and Motion to Amend ("MTA"), as well as preparation for and attendance at the oral argument regarding those two motions. (Moran Decl. ¶ 3). In addition, defendant's counsel indicates that additional attorney time was expended in redacting certain information in plaintiff's papers and in defendant's billing records. (<u>Id.</u>; Def.'s Rep.[3] at 2 (noting with respect to the billing record

---

[3]Citations to "Def.'s Rep." refer to Defendant HealthBridge Management, LLC's Reply Brief in Further Support of its Application for Attorney's Fees and Costs Associated with the Spoliation of Evidence by Plaintiff, filed on August 9, 2010.

redactions that "Defendant has redacted all time entries and has not sought the fees for anything unrelated to plaintiff's spoliation. Thus, only the work performed in connection with plaintiff's spoliation was left in as support for the fees sought")).

A. Standard for Calculating Attorneys' Fees

In Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany and Albany County Board of Elections, the Second Circuit held that when assessing whether claimed legal costs are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by looking to what a reasonable client would be willing to pay, "bear[ing] in mind *all* of the case-specific variables" that the courts have identified as relevant in setting a reasonable hourly rate. 522 F.3d 182, 190 (2d Cir. 2008) (emphasis in original); see also Simmons v. New York City Transit Auth., 575 F.3d 170, 172 (2d Cir. 2009). The Court abandoned the traditional "lodestar" method of calculating fees by multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate, see Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1159 (2d Cir. 1994), and set forth a number of factors to guide the court's inquiry as to what constitutes a reasonable hourly rate for legal services performed. As laid out in Arbor Hill, these include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of

the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections, 522 F.3d at 187 n.3 (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989)).

A number of recent cases have applied some of these Arbor Hill factors when awarding attorneys' fees. See Vilkhu v. City of New York, No. 06 CV 2095, 2009 WL 1851019 (E.D.N.Y. June 26, 2009); see also Cruz v. Henry Modell & Co., Inc., No. 05 CV 1450, 2008 WL 905351, at *3 (E.D.N.Y. Mar. 31, 2008). Courts are also instructed to balance:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively . . . , the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether the attorney might have initially acted *pro bono* . . . , and other returns (such as reputation, etc.) that an attorney might expect from the representation.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 184 (emphasis in original). It remains the attorney's burden to maintain contemporaneous records, see F. H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1260, 1265 (2d Cir. 1987), and fee applications are subject to denial where the fees have not been adequately documented. See, e.g., Riordan v. Nationwide Mut. Fire Ins. Co., 977 F.2d 47, 53 (2d Cir. 1992).

4

B. Analysis

    1. Defendant's Application

In this case, defendant's counsel seeks a total award of fees in the amount of $33,696.00 (Moran Decl. ¶ 2), representing 109.1 hours of attorney time, plus 2.50 hours of paralegal time, and 4.30 hours for "project assistant" time. (Id. ¶ 4, Ex. A). These fees were calculated by defendant using the following billing rates: 1) $350 per hour for Caroline J. Berdzik, Esq., a former shareholder of the Firm; 2) $310 per hour for David Frison, Esq., an associate of the Firm; 3) $270 per hour for Sandra S. Moran, Esq., currently a shareholder of the Firm;[4] 4) $175 per hour for Melody Dye, a paralegal; and 5) $95 per hour for Shelia Kliwinski, the Firm's "project assistant." (Id. ¶ 4). According to counsel, the billing rates for Berdzik and Moran are "reasonable in light of [their] litigation experience and the prevailing rates that attorneys charge in Northern/Central New Jersey," and Mr. Frison's rate is described as "normal and customary based on his experience and the prevailing rates that attorneys charge in New York City." (Id.)

With respect to the number of hours for which counsel fees are sought, defendant's counsel has submitted contemporaneous time records setting forth the dates upon which services were rendered, the time spent, and a description of the work performed. See New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983). According to defendant's counsel, these records have been redacted to reflect only those hours that counsel has determined relate to services performed in connection with the spoliation issue. (Moran Decl. ¶ 3, Ex. A; Def.'s Rep. at 2). Furthermore, it appears that where certain tasks were redacted, the

---

[4]At the time that she performed the services for which fees are sought, Ms. Moran was an associate of the Firm, charging $270 per hour, which is the rate she seeks here. (Moran Decl. ¶ 4).

hours billed have been manually redacted and reduced as well.

In addition to counsel fees, defendant seeks reimbursement for $21,896.34 in costs and disbursements, including expert fees. (Moran Decl. ¶ 5). In that regard, defendant has submitted the Affidavit of Jeffrey Brenner, Esq., President of Intelysis, describing the work performed in connection with the forensic investigation of plaintiff's computer, along with contemporaneous time records detailing the work performed, the date, time, and the individual at Intelysis who performed the services. (Brenner Aff.,[5] Ex. A). As defendant's counsel did with regard to their fees, Intelysis has also redacted its fees to reflect only the costs related to "our investigation into the Plaintiff's alleged spoliation activities." (Id. ¶ 5). Defendant therefore seeks reimbursement for $17,691.75 in fees charged by Intelysis, plus 7% in New Jersey State sales tax in the amount of $1,238.42, for a total of $18,930.17. (Id. ¶ 5, Ex. A). According to Mr. Brenner, the "work conducted on this matter was billed at our standard computer forensic rate of $275 per hour, and a standard computer forensic-time charge of $125 per hour . . . was used for any data processing that did not require human supervision to conduct." (Id. ¶ 7). Mr. Brenner's Affidavit also includes the curriculum vitae of the employees who worked on this matter. (Id. ¶ 6, Ex. B).

In opposing defendant's fee request, plaintiff argues that "an award of this sort . . . in the context of an employment discrimination suit, would be unjust." (Pl.'s Mem.[6] at 1). He further contends that the sanctions sought are "grossly unrelated" to plaintiff's error and suggests that they are disproportionate to the injuries actually suffered by the defendant. (Id. at 3-5). Finally,

---

[5]Citations to "Brenner Aff." refer to the Affidavit of Jeffrey Brenner, Esq., in Response to the July 9, 2010 Court Order Regarding Spoliation, and the exhibits attached thereto, dated July 20, 2010.

[6]Citations to "Pl.'s Mem." refer to the Plaintiff's Memorandum of Law in Opposition to the Application for Attorney's Fees, dated August 3, 2010.

plaintiff raises a challenge to the actual amount of time for which fees are requested, the lack of clarity in defendant's time records, and the extent to which the fees seem to include work unrelated to determining what had been deleted from plaintiff's computer or rectifying the damage caused by the spoliation. (Id.) In general, plaintiff contends that the fees requested are "excessive[]." (Id.)

The Court will examine each of these issues in turn.


2. Rate Requested

Turning first to the reasonableness of the rate requested by counsel, as defendant notes, plaintiff does not appear to challenge the per hour rates sought for the partners and associates at the Firm. (See Def.'s Rep. at 2 n.1). Nonetheless, the Court must determine whether the rates charged are consistent with rates charged in this district. See, e.g., Rotella v. Bd of Ed., No. 01 CV 0434, 2002 WL 59106, at *6 (E.D.N.Y. Jan. 17, 2002); see also Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d at 1159 (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984) (noting that the rates charged must be "'in line with those [rates] prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation'")). It is well established that "the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. at 896 n.11. The reasonable rate, in the absence of extenuating circumstances, should be based on "the hourly rates employed in the district in which the reviewing court sits." Simmons v. New York City Transit Auth., 575 F.3d at 174.

Here, defendant's counsel has submitted no evidence to support the claim that the requested billing rates are reasonable. Indeed, the only information provided by defendant's counsel in support of the Firm's hourly rates is defendant's representation that the fees requested are consistent with rates normally charged in Northern/Central New Jersey, or in the case of Mr. Frison, consistent with rates charged by attorneys in New York City. (Moran Decl. ¶ 4). However, counsel has not asserted or provided any proof that these billing rates are consistent with rates generally charged in the Eastern District of New York for attorneys of this skill and experience.

The Second Circuit has recently clarified the parameters of the "forum rule" and reiterated its holding from Arbor Hill that in calculating the presumptively reasonable fee, "courts 'should generally use 'the hourly rates employed in the district in which the reviewing court sits.''" Simmons v. New York City Transit Auth., 575 F.3d at 174 (holding that when awarding attorney's fees, there is a presumption in favor of relying on the rates where the case is litigated, not where the attorneys are located) (citations omitted); see also Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997) (quoting Polk v. New York State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983)). The presumption, as explained by the court in Arbor Hill is that "'a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally.'" Simmons v. New York City Transit Auth., 575 F.3d at 174 (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 119 (2d Cir. 2007)).

In Simmons, the Second Circuit reversed the district court's award of attorneys' fees, holding that the fee rates should be based on the average rates in the Eastern District of New York, where the case was litigated, even though the attorneys' offices were based in Manhattan,

8

in the Southern District of New York. The Circuit explained that the forum rule may be overcome if the moving party can show that "a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." 575 F.3d at 172, 175. In addition, the moving party must demonstrate "that use of in-district counsel would produce a substantially inferior result." Id. at 176. Thus, although courts may deviate from the forum rule where litigants can show that the case required "special expertise" beyond the competence of the forum's law firms, the Second Circuit emphasized in Simmons that such a deviation was "'the rare case'" and would only apply where the fee applicant could "clearly" establish that "'local counsel was unwilling to take the case, or other special circumstances existed.'" Id. at 175 (citations omitted).

In this case, under the "forum rule," the Court must abide by the presumptively reasonable fee employed in this district, which is substantially lower than in the Southern District of New York. See id. Based on the information provided by counsel, it is unclear whether the claim that Mr. Frison's fees are consistent with those charged in New York City refers to rates charged in Manhattan or Brooklyn. (See Moran Decl. ¶ 4). Moreover, there is nothing in the record before the Court to indicate how the standard fees charged in Northern and Central New Jersey compare with those charged in the Eastern District of New York, and counsel has provided no reason for this Court to abide by the rates charged in New Jersey instead of those charged in this district.

However, the Second Circuit has indicated that courts may consider evidence of prevailing rates for similar services beyond the fee application itself. See Chambles v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989). Thus, in addition to the parties' evidentiary submissions, the Court may consider its own experience and familiarity with

9

the case and with rates generally charged. See Cruz v. Local Union No. 3, 34 F.3d at 1160

(noting, "[a] district court's 'choice of rates is well within its discretion'") (quoting Cabrera v.

Jakobovitz, 24 F.3d 372, 393 (2d Cir. 1994), cert. denied, 513 U.S. 876 (1994)).

In reviewing the requested rate of $350 per hour for Ms. Berdzik, and the range of rates

charged for associates of the Firm, the Court notes that billing rates in this district vary widely

depending on the nature and difficulty of the case and the experience of the attorneys involved.

See Blue Cross and Blue Shield of New Jersey, Inc. v. Phillip Morris, Inc., 190 F. Supp. 2d 407,

426-29 (E.D.N.Y. 2002) (finding reasonable fees of $540 per hour for senior partners at Dewey

Ballantine LLP; $312 to $449 per hour for other partners; and $273 per hour for associates in the

context of tobacco litigation); Weil v. Long Island Savings Bank, 188 F. Supp. 2d 265, 269

(E.D.N.Y. 2002) (finding counsel's "customary rates" of $371 to $450 per senior partner to be

justified in a consumer class action); Leibovitz v. New York City Transit Auth., No. 95 CV

3860, 1999 WL 167688, at *1 (E.D.N.Y. Feb. 25, 1999) (awarding a rate of $300 per hour to

experienced attorney in employment discrimination litigation), rev'd on other grounds, 252 F.3d

179 (2d Cir. 2001); Rotella v. Bd. of Ed., 2002 WL 59106, at *2 (holding that the prevalent

market rate in the Eastern District of New York is between $200 and $250 per hour for partners

and between $100 to $200 per hour for junior and senior associates).[7]

Most recently, cases have indicated that reasonable fees in this district vary from $200 to

---

[7]Similar rates have also been awarded in the Southern District. See, e.g., Irish v. City of New York, No. 98 CV 713, 2004 WL 444544, at *4 (S.D.N.Y. Mar. 10, 2004) (awarding $250 per hour to lead counsel in employment discrimination action); M.L. ex rel M.P. v. Bd. of Educ., No. 02 CV 4288, 2003 WL 1057476, at *2-3, *3 n.1 (S.D.N.Y. Mar. 10, 2003) (awarding fees of $350 to $375 per hour for lead counsel and $225 per hour for associates); Rodriguez ex rel Kelly v. McLoughlin, 84 F. Supp. 2d 417, 423 (S.D.N.Y. 1999) (applying a rate of $425 per hour for the partner and $240 per hour for a fifth year associate in a civil rights action).

$375 per hour for partners and $100 to $295 per hour for associates.[8] Melnick v. Press, No. 06 CV 6686, 2009 WL 2824586, at *9 (E.D.N.Y. Aug. 28, 2009); see also Gutman v. Klein, No. 03 CV 1570, 2009 WL 3296072, at *2 (E.D.N.Y. Oct. 13, 2009) (holding that rates of $300 to $400 per hour for partners, $200 to $300 per hour for senior associates, and $100 to $200 per hour for junior associates are reasonable rates "within the Eastern District range"); Duverger v. C & C Duplicators, Inc., No. 08 CV 0721, 2009 WL 1813229, at *2 (E.D.N.Y. June 25, 2009) (quoting Cruz v. Henry Modell & Co., 2008 WL 905351, at *7 (holding that "[o]verall hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates and $70 to $80 for legal assistants," or paralegals)). One recent case set a rate of $275 per hour where a partner had 25 years of experience and worked in a small firm of 10-12 people. GuideOne Specialty Mut. Ins. Co. v. Congregation Adas Yereim, No. 04 CV 5300, 2009 WL 3241757, at *4 (E.D.N.Y. Sept. 30, 2009).

Unfortunately, the Court was provided with only limited information regarding the experience of these attorneys, their qualifications, and the number of years that these attorneys have been with the firm – information which would assist the Court in determining whether the requested rates are reasonable. Nevertheless, with respect to Ms. Berdzik, a partner at the firm, the requested rate of $350 per hour (Moran Decl. ¶ 4), falls right within the range of rates awarded in this district for partners. Similarly, with respect to Ms. Moran, counsel has provided no information regarding her years of practice or experience, but it appears that at the time that

---

[8]In awarding fees, courts should use "current rather than historic hourly rates." Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (citing Missouri v. Jenkins, 491 U.S. 274, 284 (1989)).

the work on this case was performed, she was a fairly senior associate. (Id. ¶¶ 1, 4). In any event, her requested rate of $270 per hour again falls within the range of rates awarded in other Eastern District cases.

However, with respect to Mr. Frison, who has been described as an associate, billing at $310 per hour, and Ms. Dye, the paralegal, billing at $175 per hour (id. ¶ 4), the Court finds that their requested rates are unreasonable in light of the rates normally charged for associates and paralegals in the Eastern District of New York.[9] With respect to Mr. Frison, his requested rate of $310 per hour is actually higher than the rate charged by Ms. Moran, a senior associate, turned shareholder. (Id. ¶¶ 1, 4). Presumably, this is because Mr. Frison's office is in New York City and not New Jersey. However, in the absence of any information regarding Mr. Frison's qualifications and experience, the Court finds no basis to depart from the Eastern District rates. Accordingly, the Court awards a rate of $250 per hour for Mr. Frison's time.

Similarly, with respect to Ms. Dye, a paralegal, the Court finds it unreasonable to charge $175 per hour (id. ¶ 4), when the majority of cited cases have approved rates of between $70 and $80 per hour for paralegal time. Accordingly, the Court has reduced Ms. Dye's rate to $70 per hour.

Finally, with respect to Ms. Kliwinski, the defendant has provided no information

---

[9]While the presumption in favor of applying the forum rule can be overcome in order to receive a higher, out-of-district, attorney's fee rate, as Simmons instructs, the lawyer must show that "a reasonable client" would have chosen counsel from outside the district because of the likelihood that the lawyer would "produce a substantially better net result." 575 F.3d at 175. However, since counsel here has provided no support for the associate's rate of $310 per hour, or for the paralegal's rate of $175 per hour, both of which are above the average rate in this district, this option is not available. See Gutman v. Klein, 2009 WL 3296072, at *2 (holding that rates of $300 to $400 per hour for partners, $200 to $300 per hour for senior associates, and $100 to $200 per hour for junior associates are reasonable rates "within the Eastern District range").

regarding her qualifications, experience, or duties as a "project assistant." It appears, however, from her two time entries, that her position is somewhat similar to that of a paralegal. (Moran Decl., Ex. A). As such, the Court is willing to award compensation for her time. Again, as with the paralegal, the rate charged, $95 per hour, is unreasonable and not commensurate with the rates for comparable work awarded in this district. Since defendant has requested a considerably lower rate for the project assistant's time than for the paralegal's, the Court will award a rate lower than that awarded for the paralegal. Ms. Kliwinski's time will therefore be compensated at a rate of $50 per hour.

### 3. Reasonableness of Hours Billed

Plaintiff generally challenges the reasonableness of the number of hours spent on this matter, suggesting that the hours spent were not reasonably related to the spoliation issue. (Pl.'s Mem. at 4). Having carefully reviewed the supporting records, the Court agrees that defendant's request for 115.9 hours of work[10] is not reasonably related to the spoliation issue and that a percentage reduction is appropriate.

As an initial matter, the Court may not award fees for hours requested where the requesting party has not provided adequate documentation. Scott v. City of New York, 626 F.3d 130, 133-34 (2d Cir. 2010) (quoting New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d at 1147-48). In Carey, the Second Circuit stated that "contemporaneous time records are a prerequisite for attorney's fees in this Circuit . . . we think it appropriate to convert our previously expressed preference for contemporaneous time records into a mandatory requirement

---

[10]This 115.9 hours is composed of 109.1 hours of attorney time, 2.50 hours of paralegal time, and 4.30 hours for "project assistant" time. (See supra at 5).

. . . Hereafter, any attorney who applies for court-ordered compensation in this Circuit for work done after the date of this opinion [1983] must document the application with contemporaneous time records." 711 F.2d at 1147-48. As already noted, it is plainly the attorney's burden to maintain these contemporaneous records, see F. H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d at 1265, and the fee applicant's burden to prove an award of attorneys' fees. See Blum v. Stenson, 465 U.S. at 886, 896 n.11. Therefore, fee applications are subject to denial where the fees have not been adequately documented. See, e.g., Riordan v. Nationwide Mut. Fire Ins. Co., 977 F.2d at 53.

With respect to the number of hours for which fees are sought in this case, defendant's counsel has submitted time records setting forth the dates upon which services were rendered and the amount of time spent by the various individuals, as is required. See New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d at 1147-48. (See also Moran Decl., Ex. A). However, defendant's counsel's request is for a lump sum and does not break down the fees charged per individual. Therefore, in order to reduce some of the fees charged and hours billed, the Court has had to separate out the hours billed per individual in order to make the necessary adjustments.

The Court notes that there are numerous time entries billed by Ms. Berdzik and Ms. Moran where portions of the description have been redacted, deleting tasks unrelated to the issue of spoliation, and where the total number of hours has been manually changed to reflect the reduction. However, because the original number of total hours billed was redacted, it is unclear whether the remaining time listed accurately reflects the percentage of time spent on the remaining tasks. For instance, on March 24, 2009, Ms. Berdzik reports spending 1.5 hours "review[ing] additional reports from Intelysis, review[ing] and revis[ing] counterclaim." (Moran

14

Decl., Ex. A). Although half of this description of services has been redacted, there is no way for the Court to verify that the amount of time has also been redacted by the corresponding percentages. There are numerous instances of these manual changes, which are indicated in charts attached to this Order as Appendix A (Ms. Moran) and Appendix B (Ms. Berdzik).

The Court is permitted to deny recovery for those hours that are unsupported by contemporaneous records. See, e.g., Nu-Life Constr. Corp. v. Bd. of Ed. of the City of New York, 795 F. Supp. 602, 606 (E.D.N.Y. 1992) (holding that "[s]ince no records have been provided for this time, it may not be considered in determining the fee award"). The hour adjustments submitted to the Court with this motion were clearly not kept contemporaneously and merely represent estimations prepared for the purposes of this motion. In part, this problem is exacerbated by counsel's practice of billing multiple tasks in one block of time, making it difficult to separate out individual tasks. (See discussion, infra at 17-19). However, since the portions of the descriptions that are visible are compensable, the Court has awarded fees for these entries, but has reduced the hours requested by 10% where the hours have been manually changed. (See Appendices A, B).

Moreover, there are some instances where it appears that although certain tasks[11] have been redacted, the hours were not changed. For example, on April 20, 2009, Ms. Moran billed 4.30 hours described as follows: "Reviewed and revised brief in support of MTD and MTA. Drafted, reviewed and revised Certifications in support of MTD. Drafted, reviewed and revised email to client [redacted]. . . ." (Moran Decl., Ex. A). Although there was no reduction in the time billed, almost an entire line of text in this entry has been redacted. It is impossible for the

---

[11]There is no suggestion that the redacted tasks in these entries are protected by a privilege.

Court to determine whether an entire task has been eliminated and whether the amount of time requested should also have been reduced. Additionally, on March 18, 2009, Ms. Moran spent 0.10 hours sending an "[e]mail to P. Leja [redacted]."[12] (Id.) There is no way of knowing if the two lines of redacted information that follow "[e]mail to P. Leja" refer to an activity or just information about the content of the email. Similarly, on June 16, 2009, Ms. Berdzik billed 0.40 hours to "[r]eview [redacted] from Pat Leja, review additional supporting documents from reply briefs." (Id.) Again, there is no way of knowing what Ms. Berdzik was reviewing and whether it was relevant to the spoilation of evidence in this case. Yet another similar example occurs on June 17, 2009, where Ms. Moran billed 5.20 hours for numerous tasks, one of which is "[r]eviewed [redacted] from client." (Id.) This could refer to absolutely anything.

Furthermore, many of the time entries that do not contain redactions are extremely vague in their description of the services performed and lack an adequate account of how the time was spent – information necessary to determine whether fees should be awarded. For instance, on March 12, 2009, Ms. Berdzik billed 0.40 hours for "E-Mail with Jeff Brenner re: [redacted], e-mail with client re: [redacted]." (Id.) The Court has no way of ascertaining what these emails

---

[12]The Court notes that counsel's invoices contain numerous entries that refer to Patricia Leja and other individuals, such as Albert Lugo and Lisa Crutchfield, whom counsel never identifies for the Court. Those entries are as follows: on March 6, 2009, "Advise Albert Lugo re: [redacted];" on March 18, 2009, "Email to P. Leja;" on June 14, 2009, "Email with Pat Leja re: [redacted];" on June 15, 2009, "Email with Lisa Crutchfield re: [redacted];" on June 15, 2009, "Email with P. Leja regarding [redacted];" on June 16, 2009, "review [redacted] from Pat Leja;" and on June 16, 2009, "telephone call with P. Leja regarding [redacted]." (Moran Decl., Ex. A). Based on the Court's independent review of the exhibits attached to the various motion papers for the Motion to Dismiss and Motion to Amend, it appears that these individuals are all employees of HealthBridge Management. Patricia M. Leja appears to be the VP of Marketing, Albert Lugo is the Senior VP and Counsel, and Lisa Crutchfield is the VP of Human Resources. Had the Court not found the identities of these individuals, the Court, in the absence of any explanation as to who these individuals are, would have denied defendant's request for fees for the aforementioned entries.

involved or were related to. There are numerous other examples of billing entries for emails and phone calls in which the entire subject matter has been deleted. For example, on May 5, 2009, Ms. Moran billed 0.30 hours on a telephone call with the Magistrate Judge's law clerk and "Discuss[ing] [redacted] with C. Berdzik." (Id.) Based on this record, there is no way of knowing how much time was spent talking with Ms. Berdzik or whether the topic of their conversation related to the spoliation issue

Counsel's billing invoices also contain many other vague and confusing entries. In the absence of any further detail, it is impossible to determine how much, if any, of this time was spent on work relating to plaintiff's spoliation or to the award of spoliation sanctions. Moreover, in this case, the problems created by counsel's vague descriptions are exacerbated by block-billing, or the lumping together of discrete tasks with others that are not clearly defined, which "makes it difficult for the court to allocate time to individual activities in order to gauge the reasonableness of time expended on each activity." Association of Holocaust Victims v. Bank Austria, No. 04 CV 3600, 2005 WL 3099592, at *5 n.9 (S.D.N.Y. Nov. 17, 2005). The majority of counsel's time entries contain more than one task and many contain multiple, unrelated tasks[13]

---

[13]On March 24, 2009, Ms. Moran reported spending 4.20 hours as follows: "Drafted, reviewed and revised counterclaim. Reviewed various correspondence from adversary regarding discovery. Drafted, reviewed and revised letter to adversary responding to the same." (Moran Decl., Ex. A). It is impossible to determine how much time was spent on each individual task; similarly, on June 4, 2009, Ms. Berdzik reported spending 1.40 hours as follows: "Continued review of Penberg motion papers, analyze arguments for reply brief, review letter from Arthur Schwartz re: one judge to decide motions, draft letter in reply." (Id.) On June 17, 2009, Ms. Moran billed 5.20 hours "review[ing] [redacted] from client. Reviewed Handbook. Reviewed and revised motion reply papers - MTD & MTA. Conducted legal research regarding breach of fiduciary duty. Drafted, reviewed and revised letters to Judges forwarding courtesy copies of motion papers. E-filling [sic] motions." (Id.) Due to the way these tasks are billed, it is difficult for the Court to determine whether the time spent on each task was reasonable.

that do not appear to have been performed in one block of time.[14] The Court notes that at least Ms. Moran is familiar with the idea of block-billing, as she has billed one entry in which she divided up the total amount of time spent by task. Specifically, on July 31, 2009, she billed for a total of 5.70 hours as follows: "Travel to and from EDNY for oral argument (3.6) Continued to prepare for oral argument. (.8) Attended oral argument (2) Reviewed Minute Entry of Court regarding same. (.1)."[15] (Moran Decl., Ex. A). It is therefore unclear to the Court why this was not done for all of the entries that contain multiple tasks. Where billing entries contain merely vague descriptions of services rendered, or where counsel has engaged in block-billing, courts have used percentage reductions "as a practical means of trimming fat from a fee application." New York Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d at 1146; see also Tokyo Electron Arizona, Inc. v. Discreet Indus. Corp., 215 F.R.D. 60, 64-65 (E.D.N.Y. 2003); Rotella v. Bd. of Ed., 2002 WL 59106, at *1, *3-4.

Accordingly, given the vagueness and block-billing in many of the time entries, the Court has instituted an additional 25% reduction for all of Ms. Berdzik's and Ms. Moran's hours. See, e.g., United States Football League v. Nat'l Football League, 887 F.2d 408, 415 (2d Cir. 1989) (reducing billed hours by 10% to account for vagueness), cert. denied, 493 U.S. 1071 (1990); Association of Holocaust Victims v. Bank Austria, 2005 WL 3099592, *5 (reducing lodestar by 25% to account for block-billing and vagueness); Sea Spray Holdings, Ltd. v. Pali Fin. Group,

---

[14]For example, on March 11, 2009, Ms. Berdzik billed 3.60 hours for: "E-Mails with Jeff Brenner re [redacted], review hard drives of Penberg's computer at Intelysis, analyze next steps." (Moran Decl., Ex. A). It seems likely that these three tasks were not even performed consecutively in a continuous block of 3.60 hours of time.

[15]The Court notes that the individual times listed actually add up to 6.5 hours, not 5.7 hours. However, it seems that this is because the 0.8 hours for "[c]ontinued to prepare for oral argument" overlapped with the time spent commuting, which would make the total 5.7 hours.

Inc., 277 F. Supp. 2d 323, 326 (S.D.N.Y. 2003) (reducing lodestar by 15% to account for block-billing and excessive billing); Quinn v. Nassau County Police Dep't, 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing the fees of one attorney by 20% and another by 30% for unnecessary and redundant time); American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (deducting 40% of plaintiffs' hours, finding that the "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work").

Furthermore, in this case, a review of the records suggests that an excessive amount of time was spent by Ms. Moran and Ms. Berdzik on certain tasks, such as reviewing briefs and preparing for oral argument. The law is clear that in reviewing a fee application, the court "should exclude excessive, redundant or otherwise unnecessary hours." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999) (citing Hensley v. Eckerhart, 461 U.S. at 433-35). Plaintiff points to some of defendant's repetitive entries in support of his argument that counsel's fees are unreasonable, unclear, and non-compensable, and that "[n]o effort has been made by defendant to separate out its time or explain how various work it seeks to be paid for was directed towards rectifying whatever spoliation plaintiff may have engaged in." (Pl.'s Mem. at 4-5). When reviewing Ms. Moran and Ms. Berdzik's time entries, it appears, as noted by plaintiff, that there was an inordinate amount of time spent on the Motion to Amend and reply brief in support of the Motion to Amend. Although counsel's block-billing makes it impossible to know exactly how many hours were spent solely on the Motion to Amend, the billing entries that include mention of the Motion to Amend, not including those hours for the oral argument, add up to over 59 hours.[a] (See infra at 23-24).

More importantly, plaintiff contends that attorneys' fees and costs were not awarded in connection with "work done on the motion to amend," and therefore the defendant's requested

19

fee amount should be reduced accordingly. (Pl.'s Mem. at 4). In reply, defendant argues that neither this Court's Report and Recommendation or the July 9, 2010 Order of Judge Feuerstein limited defendant's application to "only the time spent rectifying the spoliation or only associated with filing the sanctions motion." (Def.'s Rep. at 3-4). While defendant is correct that "time spent on motion practice" was not explicitly excluded from the Court's award of fees (id. at 3), the limitation was actually set by the defendant in its own motion papers.

Defendant filed two different memoranda with respect to the two different motions: one was entitled "Defendant's Memorandum of Law in Support of its Application to Amend its Answer to Include Counterclaims Against Plaintiff," and the other was entitled "Defendant's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 37 and *for Attorney's Fees and Costs*." (emphasis added). The Memorandum relating to the Motion to Amend does not request, and indeed contains no mention of attorneys' fees or costs. In its Report, this Court addressed these two motions separately (see Report at 8, 17), and in the section of the Report addressing the proposed amendment of the defendant's Answer, there is no mention of fees; the discussion and award of, attorneys' fees and costs is solely contained in the section of the Court's Report entitled "Motion to Dismiss and for Attorneys' Fees and Costs." (Id. at 15-17).

In addition to filing separate motions, defendant also explicitly emphasized in a letter to the Court, in opposition to plaintiff's request to have both motions considered together by this Court, that "[c]ontrary to plaintiff's assertions, these are not identical motions and *seek different forms of relief*." (Def.'s 6/4/09 Letter (emphasis added)). The Court agrees with the defendant here. One motion sought relief in the form of permission to amend defendant's Answer and the other sought to dismiss plaintiff's Complaint and/or attorneys' fees and costs, as a sanction for

20

spoliation.

Moreover, although defendant did seek to amend its Answer to add a claim for spoliation, this Court explicitly found that no such independent tort exists. (Report at 23-25). As this Court noted in the Report, defendant never cited any law that provided a basis for the existence of a separate tort claim for spoliation, nor did defendant ever respond to plaintiff's argument in response to the Motion to Amend that no such tort exists. (Id. at 23 (citing Pl.'s Resp.[16] at 3)). Therefore, defendant cannot claim and receive reimbursement for fees for time spent on a motion seeking to add a nonexistent cause of action.

Even if defendant was to argue that it deserved fees for that portion of the Motion to Amend that was successful – to add a claim for breach of fiduciary duty – the Court notes that the vast majority of the work was duplicative of the work done in connection with the Motion to Dismiss. The preliminary statement, procedural history, and statement of facts in the Motion to Amend are almost identical to those sections in the Motion to Dismiss. Thus, it would be inappropriate to award fees for this time, as it is clear that no independent time or research was required to produce these sections. As far as the approximately four pages of "legal argument" is concerned, defendant cites minimal case law or other authority and the Court only finds three sentences, at most, that specifically deal with the breach of fiduciary duty claim. (Def.'s MTA[17] at 11-15). Similarly, aside from a few conclusory statements such as "HBM's claims for breach of fiduciary duty and spoliation of evidence are certainly not futile" and "HBM has adequately

---

[16]Citations to "Pl.'s Resp." refer to the Plaintiff's Memorandum of Law in Opposition to Motion Dismiss [sic] and Motion to Amend, filed on June 3, 2009.

[17]Citations to "Def.'s MTA" refer to Defendant's Memorandum of Law in Support of its Application to Amend its Answer to Include Counterclaims Against Plaintiff, filed on April 23, 2009.

alleged facts that support its causes of action for breach of fiduciary duty (Count I) and spoliation of evidence (Count II)," (Def.'s MTA Rep.[18] at 3-4), defendant's four page Reply Memorandum of Law in Further Support of its Application to Amend is mostly a recitation of facts and contains only one footnote that directly relates to the fiduciary duty claim. As such, the Court concludes that the majority of the work required to prepare the Motion to Amend was either duplicative of that done for the Motion to Dismiss or was in relation to the unsuccessful cause of action for spoliation. The Court therefore denies defendant's request for any and all fees for work related to the Motion to Amend.

However, the Court notes that the task of discounting the number of hours spent on the Motion to Amend is complicated by defendant's counsel's use of block-billing. Accordingly, wherever an entire billing entry just reflects work on the Motion to Amend, those hours have been subtracted completely. However, where the hours are partially spent on the Motion to Amend and are also spent on other things, such as the Motion to Dismiss, the hours have been cut in half. In evaluating time sheets and expense records, some courts have simply subtracted irrelevant hours from the amount of hours claimed in order to calculate the actual number of hours to credit. See, e.g., Ruggiero v. Krzeminski, 928 F.2d 558, 564 (2d Cir. 1991). The district court, however, is not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). Moreover, "[i]n calculating the number of 'reasonable hours,' the court looks to 'its own familiarity with the case . . . and its experience generally as well as to the evidentiary

---

[18]Citations to "Def.'s MTA Rep." refer to Defendant's Reply Memorandum of Law in Further support of its Application to Amend its Answer to Include Counterclaims Against Plaintiff, filed on June 17, 2009.

submissions and arguments of the parties.'" Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992) (citations omitted).

As plaintiff notes, the record also suggests that the Firm spent an exorbitant amount of time on work related to the oral argument, consisting of 14.9 hours spent preparing for the oral argument and more than 10 hours in travel time for two attorneys to attend the oral argument. (Pl.'s Mem. at 5).[b] Some of these hours were billed by the project assistant, Ms. Kliwinski, whose hours have been addressed separately below. With respect to the hours billed by Ms. Moran and Ms. Berdzik for the oral argument, the Court has initially cut most of these hours by 50% to account for the fact that the oral argument was split between the Motion to Amend and Motion to Dismiss. There is one exception to this, however. On July 30, 2009, Ms. Moran billed 1.60 hours "Preparing for oral argument regarding motion to amend (updating outline, reviewing motion papers, reviewing case law)." (Moran Decl., Ex. A). As these hours are totally dedicated to the Motion to Amend, they have been cut completely. The rest of the hours billed for the oral argument, as already noted, have been reduced by 50%, and then further reduced by 25% due to the other aforementioned problems with counsel's billing records.

These calculations relating to the oral argument are as follows:

|  | Hours Billed for Oral Argument | Hours After 50% Reduction for MTA | Hours After Final 25% Reduction |
|---|---|---|---|
| Moran | 9.7 hrs[19] | 4.85 hrs | 3.6375 hrs |
| Berdzik | 10.4 hrs | 5.2 hrs | 3.9 hrs |

---

[19]Ms. Moran actually billed a total of 11.30 hours for the Motion to Amend; in this chart, the Court has reduced the total to 9.7 hours to account for the time billed by Ms. Moran on July 30, 3009 solely for the Motion to Amend. This total also includes 0.40 hours billed on November 13, 2009, long after the actual argument occurred. (Moran Decl., Ex. A).

According to the Court's calculation and its best interpretation of the information provided by defendant's counsel in their billing entries, the remainder of Ms. Moran's and Ms. Berdzik's hours break down as follows:[20]

| | Total Hours Billed | Hours Unrelated to MTA | Hours Solely re: MTA | Hours re: MTA and Other Things | Hours After Discount for MTA | Hours After Final 25% Reduction |
|---|---|---|---|---|---|---|
| Moran | 66.5 hrs[21] | 9.3 hrs | 9.5 hrs[c] | 35.25 hrs[d] | 26.925 hrs[e] | 20.1938 hrs |
| Berdzik | 42.1 hrs[22] | 13.96 hrs[f] | 3 hrs[g] | 13.49 hrs[h] | 20.705 hrs[i] | 15.5288 hrs |

In total, after all reductions, Ms. Moran has 23.8313 billable hours (20.1938 + 3.6375) and Ms. Berdzik has 19.4288 hours (15.5288 + 3.9).

Mr. Frison, unlike the other two attorneys on this case, has only charged a total of 0.50 hours for "Researching leave to amend and spoliation standards; e-mailing S. Moran," on April 9, 2009. (Moran Decl., Ex. A). While Mr. Frison's entry does not appear to have been redacted or adjusted in any way, the Court must cut Mr. Frison's hours in half for the time spent on the Motion to Amend. The Court therefore awards fees for Mr. Frison's 0.25 hours of work on this case.

---

[20]Further explanation as to how the Court arrived at these calculations and what dates/billing entries the Court has considered in each of these categories are included in the endnotes indicated.

[21]This total includes the aforementioned 11.30 hours billed by Ms. Moran for the oral argument.

[22]This total number of hours includes the 10.4 hours billed by Ms. Berdzik for the oral argument. The Court also notes that on February 27, 2009, there is an entry for 0.80 hours with no name associated with it. Above, on the same page, there is an entry with Ms. Berdzik's name, but with no hours or billing description associated with it. It is not clear to the Court whether the 0.80 hours were billed by Ms. Berdzik, so they have not been included in her hours.

Ms. Dye, the paralegal, has billed 2.50 hours in one entry, on June 17, 2009, for "Attention to redaction of Penberg filing and assist in preparation of documents being e-filed this date." (Id.) Ms. Dye's entry does not appear to have been redacted or adjusted in any way. However, it is unclear to the Court what exactly "Attention to redaction" means. Furthermore, the Court finds it excessive to bill 2.50 hours for collecting and preparing documents for e-filing. In addition, the documents filed on June 17, 2009, as mentioned in this entry, were the Reply in Support of the Motion to Amend and the complete Motion to Dismiss. As such, the Court has decreased these hours by 50%, to 1.25 hours, to account for the Motion to Amend, as discussed above. The Court therefore awards fees for 1.25 hours of work performed by Ms. Dye.

Lastly, Ms. Kliwinski, the project assistant, billed for work performed on this case on two separate occasions. On July 15, 2009, she billed 3.50 hours described as: "Compile, organize and index documents in connection with motions filed, opposition filed and reply filed; compile, organize and index cases cited by Plaintiff and Defendant for use by C. Berdzik in Oral Argument." (Id.) On July 28, 2009, she billed 0.80 hours to "Update citations and revise index of cases cited in court filings for attorney use at Oral Argument." (Id.) As with Mr. Frison and Ms. Dye, it does not appear that Ms. Kliwinski's entries have been adjusted by defendant's counsel. However, again, the Court finds it unreasonable and excessive to spend 4.3 hours simply creating an index of the documents filed in this case and another of the cases cited in those documents. Furthermore, as these hours are all spent in relation to the oral argument, the Court has reduced Ms. Kliwinski's hours first by 50%, to 2.15 hours. The Court has then applied the same 25% reduction for block-billing and excessiveness, and therefore awards fees for only 1.6125 hours billed by Ms. Kliwinski.

Having considered the parties' submissions, the Court therefore awards defendant a total

of $13,465.16 in attorney's fees, calculated as follows:

| | Total Number of Hours Billed | Hours After Reductions | Awarded Hourly Rate | Total Amount Awarded |
|---|---|---|---|---|
| Dye | 2.50 hrs | 1.25 hrs | $70/hr | $87.50 |
| Kliwinski | 4.30 hrs | 1.6125 hrs | $50/hr | $80.63 |
| Frison | 0.50 hrs | 0.25 hrs | $250/hr | $62.50 |
| Total | | | | $230.63 |

| | Total Number of Hours Billed | Hours After Reductions for Motion to Amend | Awarded Hourly Rate | Total Amount Awarded |
|---|---|---|---|---|
| Moran | 66.5 hrs | 23.8313 hrs | $270/hr | $6,434.45 |
| Berdzik | 42.1 hrs | 19.4288 hrs | $350/hr | $6,800.08 |
| Total | | | | $13,234.53 |

4. Expert Fees: Work Performed by Intelysis

Defendant also requests reimbursement for the fees paid for the services of Intelysis Corp., the forensic investigations firm that defendant retained to access information from plaintiff's computer. In connection with the request, defendant included a sworn affidavit from Jeffrey Brenner, President of Intelysis, along with a redacted copy of Intelysis' invoice on the matter. Mr. Brenner avers that "redacted line items do not pertain to [the] investigations of the deleted files," and "[a]ll remaining time entries are directly related to [the] forensic investigation of the Plaintiff's activities in connection with the destruction of HealthBridge's property." (Brenner Aff. ¶ 4). According to Brenner, the total cost associated with the investigation of plaintiff's alleged spoliation activities totaled $18,930.17, which includes $17,691.75 in actual

26

fees and $1,238.42 in taxes. (Id. ¶ 5, Ex. A). According to Mr. Brenner, the "work conducted on this matter was billed at our standard computer forensic rate of $275 per hour, and a standard computer forensic-time charge of $125 per hour . . . was used for any data processing that did not require human supervision to conduct." (Id. ¶ 7).

However, in reviewing the invoice, the Court noticed that there are three instances in which the hourly rate charged is neither $125 or $275, but $245, for which there is no explanation; a total of 19.9 hours were billed at this $245 rate, for a total of $4,875.50. (Id., Ex. A). In addition, Intelysis seeks reimbursement for of 33.23 hours, billed at the rate of $125 per hour, totaling $4,153.75, for work described as done without any "human supervision." (Id.) Mr. Brenner's affidavit explains that "Intelysis used state of the art computer hardware and forensic software to conduct the data collection . . . and developed its own proprietary computer source coding to locate deleted files," stating that "the operating software [on the Macintosh computer] was more efficient in its ability to delete the files requiring us to incur additional time developing these software tools and investigating other digital 'fingerprint' left behind on the computer." (Id. ¶ 8). Presumably, however, this would account for much of the time billed by the individuals who work for Intelysis, as opposed to time performed without "human supervision."

Regardless, defendant has not provided any case law or other form of support for a claim of compensation for work performed solely by computers. Defendant did provide the Supplemental Affidavit of Jeffrey Brenner, addressing some of plaintiff's complaints regarding time spent indexing plaintiff's computer files and restoring documents, but this Supplemental Affidavit, and its attachment, merely explain the "process of 'indexing' a computer's data," and the "purpose, reasons, and need for indexing the data in an electronic document investigation."

(Brenner Supp. Aff.[23] ¶¶ 2-4). There is no indication in that affidavit that it is reasonable and customary for such fees to be compensated, especially at such a high hourly rate, and the Court has been unable to find any case law to that effect. Furthermore, defendant has failed to provide an affidavit of support or any other form of proof to demonstrate that the $275 and $245 fees charged for the work performed by Intelysis's employees is reasonable.

When the reasonableness of an expert's fees is not fully explained, the Court may exercise its discretion to determine a reasonable fee. Carafino v. Forester, No. 03 CV 6258, 2005 WL 1020892, at *2 (S.D.N.Y. Apr. 29, 2005) (citing Mannarino v. United States, 218 F.R.D. 372, 374 (E.D.N.Y 2003)); The Mark Andrew of the Palm Beaches, Ltd. v. GMAC Commercial Mortg. Corp., No. 01 CV 1812, 2003 WL 21767633, at *1 (S.D.N.Y. July 31, 2003) (reducing a requested expert fee where the expert had "fail[ed] to explain his hourly rate, much less justify it"). If the parties provide little evidence to support their interpretation of a reasonable rate, the court may use its discretion to determine a reasonable fee. New York v. Solvent Chemical Co., Inc., 210 F.R.D. 462, 468 (W.D.N.Y. 2002). In determining what is a reasonable fee, courts should keep in mind that "the underlying purpose of Rule 26(b)(4)(C) is to compensate experts for their time spent participating in litigation and to prevent one party from unfairly obtaining the benefit of the opposing party's expert's work free from cost." Id. (citing Goldwater v. Postmaster General, 136 F.R.D. 337, 339 (D. Conn. 1991)). Since there is very little authority as to what is meant by "a reasonable fee," most courts use their discretion to select an amount deemed reasonable. Goldwater v. Postmaster General, 136 F.R.D at 339 (citing Hurst v. United States,

---

[23]Citations to "Brenner Supp. Aff." refer to the Supplemental Affidavit of Jeffrey Brenner, Esquire in Response to the July 9, 2010 Court Order Regarding Spoliation," filed on August 9, 2010.

123 F.R.D. 319, 321 (D.S.D. 1988)). In <u>Goldwater</u>, the court set forth six factors to consider

when determining whether an expert's fee is reasonable within the meaning of Rule 26(b)(4)(C).

See <u>New York v. Solvent Chemical Co., Inc.</u>, 210 F.R.D at 468. These factors include:

> (1) the witness's area of expertise; (2) the education and training
> that is required to provide the expert insight which is sought; (3)
> the prevailing rates of other comparably respected available
> experts; (4) the nature, quality and complexity of the discovery
> responses provided; (5) the cost of living in the particular
> geographic area; and (6) any other factor likely to be of assistance
> to the court in balancing the interests implicated by Rule 26.

<u>Id.</u> (citing <u>Goldwater v. Postmaster General</u>, 136 F.R.D at 340). The weight to be given any one

of the aforementioned factors in a particular case depends on the circumstances before the court.

<u>Goldwater v. Postmaster General</u>, 136 F.R.D at 340. Furthermore, it is the party seeking

reimbursement of the expert fees that "bears the burden of proving reasonableness." <u>New York

v. Solvent Chemical Co., Inc.</u>, 210 F.R.D at 468 (citing <u>Royal Maccabees Life Ins. Co. v.

Malachinski, D.O.</u>, No. 96 C 6135, 2001 WL 290308, at *16 (N.D. Ill. Mar. 20, 2001)).

However, in this case, defendant has provided no support for the reasonableness of the

expert's fees, simply stating in its reply papers, that "[c]ontrary to plaintiff's unsupported

assertion, the work conducted by defendant's forensic expert was reasonable and followed

commonly accepted procedures in investigating spoliation issues." (Def.'s Rep. at 3). While

defendant does provide the resumes of the Intelysis employees and some additional information

as to their "area of expertise," and "the nature" and "complexity of the discovery responses

provided," defendant does not provide any information regarding factor number three, "the

prevailing rates of other comparably respected available experts." <u>New York v. Solvent

Chemical Co., Inc.</u>, 210 F.R.D at 468. The only potential support provided is a statement in the

Brenner Affidavit that represents that the charge was a "standard forensic rate." (Brenner Aff. ¶

7). However, without any baseline of rates charged by similar experts, it is difficult for the Court to determine whether the $275 and $245 rates are reasonable. Therefore, the Court has cut the amount of fees requested for the work performed by Intelysis employees by 15%.

Furthermore, based on the aforementioned factors, the Court finds the amount of time and money charged for work performed by computers without human supervision to be unreasonable. Since defendant has provided no authority supporting compensation for solely computer-generated work, and the Court has been unable to find anything to that effect, the Court denies defendant's request for compensation for the $4,153.75 charged for computer forensic-time. The Court also, therefore, denies the request to recover the 7% in New Jersey State sales tax charged on this fee, which amounts to $290.76, for a total of $4,444.51.

This leaves $14,485.66 charged for by Intelysis for employee time. Applying the aforementioned 15% reduction leaves $12,312.81. Having reviewed the Intelysis records, the Court awards defendant $12,312.81 in expert fees.

### 5. Other Costs and Disbursements

In addition to the expert fees of $18,930.17, defendant has also requested compensation for an additional amount of $2,966.17 in other costs and disbursements.[24] (Moran Decl. ¶ 5).

Rule 54(d) of the Federal Rules of Civil Procedure governs the awarding of costs by a federal district court, Fed. R. Civ. P. 54(d)(1), and "[c]onstruing this provision, the Supreme Court has held that the term 'costs' includes only the specific items enumerated in 28 U.S.C. §

---

[24]Although the defendant never actually asks for $2,966.17 in costs and disbursements, this is the amount arrived at when subtracting the expert fees of $18,930.17 from the total amount requested for costs, $21,896.34.

1920." Whitfield v. Scully, 241 F.3d 264, 269 (2d Cir. 2001) (citing Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987)). 28 U.S.C. § 1920 provides that:

> A judge or clerk of any court of the United States may tax as costs the following:
>
>> (1) Fees of the clerk and marshal;
>> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>> (3) Fees and disbursements for printing and witnesses;
>> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>> (5) Docket fees under section 1923 of this title;
>> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. Aside from costs that fall within these categories, defendant's counsel has billed $46.44 for assorted parking and transportation costs and $46.48 for telephone or conference call charges. (Moran Decl., Ex. A). There are also charges for photocopying and telecopying, totaling $1,278.40,[25] and postage and express mail charges totaling $219.82.[26] (Id.) In addition, there are four instances in which costs have been billed for "On-Line Search Service," in the amounts of $113.42, $728.35, $425.53, and $107.73, for a total of $1,375.03. (Id.) Given the lack of description or explanation regarding what the search service was being used for in these instances, or how many hours of searching this accounts for, it is unclear whether these costs include research time spent on issues beyond plaintiff's spoliation.

––––––––––––––––––

[25]This $1,278.40 consists of the a charge of $13.20 for "Pitney Bowes Management Services," charges in the amounts of $470.80, $5.00, $98.00, $469.00, and $167.40 for photocopying, and charges of $42.50 and $12.50 for telecopying. (Moran Decl., Ex. A).

[26]This $219.82 consists of charges in the amounts of $7.14, $1.62, and $1.76 for "postage" and $74.90, $18.40, $109.70, and $6.30 for "Express Mail - UPS." (Moran Decl., Ex. A).

31

Merely because a cost is not authorized by 28 U.S.C. §1920 does not necessarily mean the cost is not recoverable. Swift v. Blum, 502 F. Supp. 1140, 1148 (S.D.N.Y. 1980). Numerous courts have granted costs for "all incidental and necessary expenses incurred in furnishing effective and competent representation." Id. (citation omitted). "Identifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs" are typically compensable. Kuzma v. Internal Revenue Serv., 821 F.2d 930, 933-34 (2d Cir. 1987); see also Duke v. County of Nassau, No. 97 CV 1495, 2003 WL 23315463, at *6 (E.D.N.Y. Apr. 14, 2003) (holding that "[c]ourts have continuously recognized the right for reimbursement of costs such as photocopying, postage [and] transportation"). The Second Circuit has also suggested that computer legal research costs, such as charges for Westlaw, may be recoverable. Davis v. New York City Housing Auth., No. 90 CV 628, No. 92 CV 4873, 2002 WL 31748586 at *13 (S.D.N.Y. Dec. 6, 2002); see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 369 F.3d 91, 98 (2d Cir. 2004) (holding that charges for online research "may properly be included in a fee award" because "the use of online services likely reduces the number of hours required for an attorney's manual search"); Cheesecake Factory Assets Co. LLC v. Philadelphia Cheese Steak Factory, Inc., No. 05 CV 3243, 2008 WL 2510601, at *6 (E.D.N.Y. June 20, 2008) (holding that "[p]ost-Arbor Hill decisions in this district have allowed reimbursement for computerized research"). The Court therefore finds it appropriate to reimburse defendant for the aforementioned types of costs.

However, defendant has provided no receipts or descriptions of any kind to support its expenditures. As with the attorneys' fees, the Court cannot base an award upon amounts requested where the requesting party has not provided adequate documentation. See Scott v. City of New York, 626 F.3d at 133-34; Riordan v. Nationwide Mut. Fire Ins. Co., 977 F.2d at 53;

32

New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d at 1136. While counsel has included invoices listing the charges, many of the charges lack sufficient documentation to be included in defendant's application for costs. See F. H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d at 1265. Therefore, the Court has reduced the $2,966.17 in additional fees by 15%, to $2,521.24.

## CONCLUSION

Accordingly, for the reasons stated above, the Court hereby Orders plaintiff to pay attorneys' fees and costs to defendant in the amount of $28,299.21. This number represents $13,465.16 in attorneys' fees, plus $14,834.05 in costs, including $12,312.81 in expert fees awarded for the work performed by Intelysis.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing ("ECF") system or by mail.

SO ORDERED.

Dated: Brooklyn, New York
March 22, 2011

Cheryl L. Pollak
United States Magistrate Judge

33

## Appendix A:  Manually Changed Time Entries for Sandra S. Moran[27]

| Date | Hours Claimed | Fees Claimed ($270/hr) | Percentage Deduction | Adjusted Hours | Fees Granted ($270/hr) |
|---|---|---|---|---|---|
| 3/24/2009 | 4.20 | $1,134 | 10% | 3.78 | $1,020.60 |
| 4/16/2009 | 4.0 | $1,080 | 10% | 3.6 | $972 |
| 4/22/2009 | 3.0 | $810 | 10% | 2.7 | $729 |
| 5/06/2009 | .30 | $81 | 10% | .27 | $72.9 |
| **Total** | **11.5** | **$3,105** | | **10.35** | **$2,794.50** |

[27](See Moran Decl., Ex. A).

**Appendix B:  Manually Changed Time Entries for Caroline J. Berdzik**[28]

| Date | Hours Claimed | Fees Claimed ($350/hr) | Percentage Time Reduction | Adjusted Hours | Fees Granted ($350/hr) |
|---|---|---|---|---|---|
| 3/01/2009 | .40 | $140 | 10% | .36 | $126 |
| 3/02/2009 | .30 | $105 | 10% | .27 | $94.50 |
| 3/06/2009 | .80 | $280 | 10% | .72 | $252 |
| 3/11/2009 | 3.60 | $1,260 | 10% | 3.24 | $1,134 |
| 3/12/2009 | .40 | $140 | 10% | .36 | $126 |
| 3/18/2009 | .30 | $105 | 10% | .27 | $94.50 |
| 3/19/2009 | .30 | $105 | 10% | .27 | $94.50 |
| 3/24/2009 | 1.50 | $525 | 10% | 1.35 | $472.50 |
| 3/31/2009 | .20 | $70 | 10% | .18 | $63 |
| 4/07/2009 | .70 | $245 | 10% | .63 | $220.50 |
| 4/09/2009 | .10 | $35 | 10% | .09 | $31.50 |
| 4/17/2009 | 2.30 | $805 | 10% | 2.07 | $724.50 |
| 4/23/2009 | 1.60 | $560 | 10% | 1.44 | $504 |
| **Total** | **12.5** | **$4,375** | | **11.25** | **$3,937.50** |

[28](See Moran Decl., Ex. A).

## Endnotes

a.   These entries were as follows:

| Date | Hours | Description |
|------|-------|-------------|
| March 24, 2009 | 1.50 hours | "Review additional reports from Intelysis, review and revise counter claim" |
| March 24, 2009 | 4.20 hours | "Drafted, reviewed and revised Counterclaim. Reviewed various correspondence from adversary regarding discovery. Drafted, reviewed and revised letter to adversary responding to same" |
| April 7, 2009 | 0.70 hours | "Review messages from plaintiff's counsel, analyze research to be done re: spoliation" |
| April 8, 2009 | 1.60 hours | "Conduct[ing] legal research regarding motion to dismiss and motion to amend based on spoliation of evidence" |
| April 8, 2009 | 0.30 hours | "Developed strategy regarding motion to amend and motion to dismiss regarding spoliation of evidence" |
| April 9, 2009 | 0.60 hours | "Review[] case law regarding spoliation of evidence" |
| April 9, 2009 | 0.50 hours | "Researching leave to amend and spoliation standards; e-mailing S. Moran" |
| April 13, 2009 | 2.30 hours | "Began drafting brief in support of motion to amend" |
| April 14, 2009 | 3.80 hours | "Reviewed and revised Amended Answer/Counterclaim. Continued to draft brief in support of motion to amend" |
| April 15, 2009 | 1.10 hours | "Revise draft counterclaim" |
| April 15, 2009 | 3.40 hours | "Continued to draft and revise proposed counterclaim and brief in support of motion to amend" |
| April 16, 2009 | 4.0 hours | "Continued to draft brief in support of motion to amend. Continued to draft brief in support of motion to dismiss" |
| April 17, 2009 | 2.30 hours | "Review brief re: motion to add counter claim, revise draft brief re: motion to dismiss complaint" |
| April 20, 2009 | 1.90 hours | "Review and revise affidavit of Jeff Brenner, Jen O'Brien and motion to add counterclaim" |

| April 20, 2009 | 4.30 hours | "Reviewed and revised brief in support of MTD and MTA. Drafted, reviewed and revised Certification in support of MTD. Drafted, reviewed and revised email to client [redacted]. Drafted, reviewed and revised email to Intelysis regarding [redacted]" |
|---|---|---|
| April 22, 2009 | 1.00 hours | "Draft letter to Arthur Schwartz re: computer files, revise motion papers for two motions, review exhibits to certifications, e-mail with Jen O'Brien re: [redacted]" |
| April 22, 2009 | 3.0 hours | "Drafted, reviewed and revised (NOM, COS, Order for motion to dismiss and motion to amend). Reviewed and revised Amended Answer. Reviewed and revised Affidavit of J. O'Brien. Drafted, reviewed and revised Declaration of C. Berdzik in support of motion to amend. Gathered and prepared exhibits for motions. Reviewed correspondence to adversary regarding deletion of documents" |
| April 23 2009 | 1.60 hours | "Final edits to orders, notices of motion, certifications and briefs" |
| April 23 2009 | 2.10 hours | "Finalizing all motion papers for filing. Drafted, reviewed and revised letter to court sending courtesy copy of motion papers. E-filing same" |
| May 6 2009 | 0.30 hours | "Telephone call with Magistrate Judge's law clerk regarding motion to amend. Discussed [redacted] with C. Berdzik" |
| May 11, 2009 | 0.40 hours | "Drafted, reviewed and revised letters to court regarding briefing schedules for MTD and MTA. E-filed the same" |
| May 26, 2009 | 0.10 hours | "Review status and strategy regarding pending motions" |
| June 3, 2009 | 1.10 hours | "Begin review of opposition papers to two motions we filed" |
| June 3, 2009 | 0.80 hours | "Reviewed Penberg's opposition to motion to dismiss and motion to amend. Drafted, reviewed and revised summary of the same" |
| June 4, 2009 | 1.40 hours | "Continue review of Penberg motion papers, analyze arguments for reply brief, review letter from Arthur Schwartz re: one judge to decide motions, draft letter in reply" |

| June 11, 2009 | 0.20 hours | "Began preparing reply brief to MTD - MTA" |
|---|---|---|
| June 12, 2009 | 2.80 hours | "Drafting reply brief in further support of MTD and MTA;" June 14, 2009, for 2.60 hours, "E-mail with Jeff Brenner re: [redacted], e-mail with Pat Leja re: [redacted], e-mail with HR re: [redacted] revise briefs on motion to amend and motion to dismiss" |
| June 14, 2009 | 3.60 hours | "Drafted, reviewed and revised reply brief in support of Motion to Amend and Motion to Dismiss. Conducted research for the same" |
| June 16, 2009 | 2.90 hours | "Revising reply briefs in further support of MTD and MTA. Conducted research regarding same. Telephone call with P. Leja regarding [redacted]. Revised Leja Screenings Affidavit" |
| June 17, 2009 | 0.60 hours | "Final revisions to reply briefs on motions to amend and motions to dismiss" |
| June 17, 2009 | 5.20 hours | "Reviewed [redacted] from client. Reviewed Handbook. Reviewed and revised motion reply papers - MTD & MTA. Conducted legal research regarding breach of fiduciary duty. Drafted, reviewed and revised letters to Judges forwarding courtesy copies of motion papers. E-filling motions" |

(Moran Decl., Ex. A).

b.      These entries were as follows:

| Date | Hours | Description |
|---|---|---|
| July 14, 2009 | 0.60 hours | "Preparing for oral argument - MTD and MTA" |
| July 15, 2009 | 0.90 hours | "Review and respond to correspondence from Penberg's attorney, begin review of outline for oral argument" |
| July 15, 2009 | 3.50 hours | "Compile, organize and index documents in connection with motions filed, opposition filed and reply filed; compile, organize and index cases cited by Plaintiff and Defendant for use by C. Berdzik in Oral Argument" |
| July 16, 2009 | 0.60 hours | "Review additional cases to prepare for oral argument on Motion and Amend Motion to Dismiss" |
| July 24, 2009 | 0.70 hours | "Continue preparing re: oral argument" |

| July 27, 2009 | 0.60 hours | "Continue review of cases for oral argument" |
|---|---|---|
| July 27, 2009 | 0.40 hours | "Preparing outline for oral argument" |
| July 28, 2009 | 2.60 hours | "Preparing outline for oral argument for MTD and MTA" |
| July 28, 2009 | 0.80 hours | "Update citations and revise index of cases cited in court filings for attorney use at Oral Argument" |
| July 30, 2009 | 1.90 hours | "Final review of cases cited in motion to dismiss, review oral argument outline" |
| July 30, 2009 | 1.60 hours | "Preparing for oral argument regarding motion to amend (updating outline, reviewing motion papers, reviewing case law)" |
| July 31, 2009 | 5.70 hours | "Prepare for oral argument, phone call with client re: [redacted], travel and attend oral argument re: motion to dismiss and motion for sanctions" |
| July 31, 2009 | 5.70 hours | "Travel to and from EDNY for oral argument (3.6) Continued to prepare for oral argument (.8) Attended oral argument (2) Reviewed Minute Entry of Court regarding same (.1)" |
| November 13, 2009 | 0.40 hours | "Review[] and revise[] letter to court forwarding requested documents in connection with motions to amend and dismiss. Reviewed documents prior to sending to court" |

(Moran Decl., Ex. A).

c.      These hours were billed on April 13, 14, and 15, 2009 and on May 26, 2009.

d.      These hours were billed on March 24, 2009, April 8 (two entries), 9, 16, 20, 22, and 23, 2009, May 6, 11, and 26, 2009, and June 3, 11, 12, 14, 16, and 17, 2009. The Court notes that all four of the dates for which Ms. Moran's hours were initially decreased by 10% for manual alteration of the hours fall within this category of hours. (Appendix A). The total reduction in hours taken for that 10% was 1.15 hours. As a result, Ms. Moran billed 36.4 hours that were partially for the Motion to Amend, but the Court has subtracted those 1.15 hours, resulting in 35.25 hours.

e.      This amount includes the 9.3 hours unrelated to the Motion to Amend and 50% of the 35.25 hours partially related to the Motion to Amend (17.625 hours).

f.      6.4 of these hours are for entries with manually redacted hours, for which the Court imposed an initial 10% reduction. (Appendix B). As a result, this total represents 0.64 hours

subtracted from 14.6 hours.

g.        These entries are for April 15 and 20, 2009.

h.        These entries are for March 24, 2009, April 7, 17, 22, and 23, 2009, May 22 and 26, 2009, and June 3, 4, 9, 14, and 17, 2009. The Court notes that 4 of these entries are among those to which the Court applied a 10% discount earlier, for a discount of 0.61 hours. (Appendix B). This amount represents 0.61 hours subtracted from 14.1 hours billed partially for the Motion to Amend. The Court further notes that this 0.61 hour reduction and the 0.64 hour reduction mentioned in endnote f, add up to the total 1.25 hour reduction applied to Ms. Berdzik's hours for the manual hour adjustments. (Id.)

i.        This number represents the 13.96 hours unrelated to the Motion to Amend and the 13.49 hours discounted by 50% (6.745 hours).